

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00063-CR

JAMES EARL PILAND, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR 13-214

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# OPINION

In April 2013, Overton police officers, Brad Loden and Mary Williams, responding to the scene of a reported domestic disturbance, encountered James Earl Piland, who smelled of alcohol and was acting erratically. Loden testified that, while he was attempting to handcuff Piland to assure officer safety, Piland punched him in the shoulder, causing him pain. Piland appeals the resulting conviction for assault on a public servant,[1] claiming a defective indictment, a lack of evidence to convict him, and the ineffectiveness of his trial counsel based on a failure to transmit a plea offer.[2]

Although the State agrees with Piland that his trial counsel's failure to tell Piland of a plea offer constituted ineffective assistance of counsel and although the State fails to argue against Piland's other points, we affirm the trial court's judgment because (1) Piland's claim of ineffective assistance of counsel has not been established, (2) sufficient evidence supports Piland's conviction, and (3) Piland forfeited any claim of indictment defect.

*(1)     Piland's Claim of Ineffective Assistance of Counsel Has Not Been Established*

Piland contends that he received ineffective assistance of counsel because his trial counsel did not inform him of an offered plea agreement for a three-year term of confinement. The State has responded only to the issue regarding ineffective assistance of counsel, agreeing

---

[1]As applicable to this case, intentionally, knowingly, or recklessly causing bodily injury to another—assault— becomes a third-degree felony if it is committed against one the defendant knows is a public servant while that servant is lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2014).

[2]The plea offer that went uncommunicated was for three years' confinement. As a result of the conviction, Piland was sentenced to sixteen years' imprisonment.

that its offer was not transmitted to the defendant and adopting Piland's position that such a failure necessarily constitutes ineffective assistance of counsel that requires reversal.[3]

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

Failure of a criminal defense counsel to inform his or her client of plea offers made by the State falls below an objective standard of professional reasonableness. *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000), *overruled on other grounds by Ex parte Argent*, 393 S.W.3d 781 (Tex. Crim. App. 2013); *Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex. Crim. App. 1987) (failure of counsel to advise defendant of plea offer by government constitutes "gross deviation from accepted professional standards"). Just last year, however, the Texas Court of Criminal Appeals reversed its position in *Lemke* that such an error, without separate proof of

---

[3]In its brief, the State agrees with Piland's argument in connection with this point of error. The State asks that we either modify the sentence to conform with the agreement of three years' confinement or remand to the district court for specific performance of the plea agreement.

prejudice, established a claim of ineffective assistance of counsel.[4]  In that, most recent, formulation, the court continued to agree that substandard representation was shown, but adopted a higher threshold to show that the defendant was prejudiced. *Argent*, 393 S.W.3d at 784.  In so doing, the court applied the three-part test announced in *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012).

Now, to establish prejudice from the ineffective assistance of counsel because defense counsel does not tell his or her client about a plea offer, the appellant must show a reasonable probability that (1) he or she would have accepted the offer if it had been communicated, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the plea agreement.  *Argent*, 393 S.W.3d at 784; *Rodriguez v. State*, 424 S.W.3d 155, 159 (Tex. App.—San Antonio 2014, pet. granted).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  In other words, the question is whether it is reasonably likely that the outcome would have been different as a result. *Harrington v. Richter*, 131 S.Ct. 770, 791–92 (2011).  "The likelihood of a different result must be substantial." *Id*. at 792; *see Argent*, 393 S.W.3d at 784; *Rodriguez*, 424 S.W.3d at 159.

The only way in which such a probability can be assessed on direct appeal is through the statements of counsel, client, and trial court.  *Argent* does not mandate that evidence on the subject be taken at a hearing.  In this case, appellate counsel stated that the offer was made and that the offer remained available, as shown by a subsequent plea offer signed during the course

_____

[4]A defendant's Sixth Amendment right to effective assistance of counsel extends to all critical stages of trial, including the plea-bargaining process. *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012).

4

of this appeal, in which the State re-offered Piland its original three-year deal. Counsel states that Piland would have accepted the earlier offer and will certainly accept this one, in light of the sixteen-year sentence assessed in the case.

That shows a reasonable probability that Piland would have accepted the offer and that the State did not or would not withdraw it. Thus, the first two parts of the three-part test have been satisfied.

The third part requires a showing that the trial court would have accepted the plea agreement. There is nothing to establish or refute this element. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (West Supp. 2014). The offer was not presented to the trial court for acceptance or rejection. The briefing also makes no statement about the trial judge's practice, mental state, or reaction to such an agreement; the record sheds no light on the matter, and there is no notation on the docket concerning either the first or second time the offer was made by the State. Accordingly, one of the three requirements has not been met. On this record, the high threshold of the *Argent* standard has not been met. Based solely on the record before us, Piland's claim of ineffective assistance of counsel would fail.

A remaining question is whether we should honor the request by the State that the case be remanded so that the trial court can make such a determination. We ordinarily accept a confession of error by the State. *Hawkins v. State*, 613 S.W.2d 720, 723 (Tex. Crim. App. 1981). We are not, however, bound by the State's confession of error. *Meshell v. State*, 739 S.W.2d 246, 250 n.4 (Tex. Crim. App. 1987). A confession of error by the State is not conclusive when reviewing an appeal, and, in the absence of reversible error, we are not to make our ruling based

5

on the State's request to reverse. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We do not believe we are authorized to reverse merely on the request of a party. Under this state of the law, a claim of ineffective assistance of counsel has not been established.[5]

*(2)      Sufficient Evidence Supports Piland's Conviction*

Piland asserts the insufficiency of the evidence to support the conviction. He points to language in the indictment and the charge requiring the jury to find that Loden was in the process of arresting Piland and by so doing was acting in the performance of his official duty as a public servant at the time of the assault. Piland also contests the sufficiency of the evidence to support the allegation that he caused bodily injury to Loden.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to

---

[5]This matter could be addressed by a petition for habeas corpus and a concomitant hearing to address that question. So long as relevant information is made part of the record, the requirements of controlling caselaw might be met. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *cf. Massaro v. United States*, 538 U.S. 500, 504–05 (2003). If these allegations were presented in an application for a writ of habeas corpus and were established, the trial court could make findings of fact in accordance with *Argent* that might entitle Piland to relief based on satisfaction of the sole remaining requirement of establishing that the trial court would have accepted the plea agreement. *See Argent*, 393 S.W.3d at 784.

6

draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

> The charge instructs the jury to determine guilt based on whether Piland
>
> did . . . cause bodily injury to Brad Loden, by striking the said Brad Loden with the defendant's fists while the said Brad Loden was trying to arrest the defendant, and the said Brad Loden was then and there a public servant, to-wit: a police officer . . . acting in lawful discharge of his official duty, and the defendant knew that the said Brad Loden was a public servant because the said Brad Loden was wearing a distinctive uniform and displaying his badge . . . .

Had the testimony been different, we might assume that, because the officers were attempting to handcuff Piland, they were indeed in the process of arresting him. In light of their specific and emphatic testimony to the contrary, however, we cannot conclude there is any evidence of an attempted arrest. The question, then, is whether it was necessary in this instance for the State to actually prove everything it alleged. Under the "hypothetically correct jury charge," we conclude that there was no requirement that the State prove the arrest allegation.

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The Texas Court of Criminal Appeals has required courts of appeals to disregard such mistakes through use of a "hypothetically correct jury charge" rather than the charge actually presented to the jury. The essential elements of the offense are defined by the hypothetically

correct jury charge for the case. A hypothetically correct jury charge does four things: (1) accurately sets out the law, (2) is authorized by the indictment, (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried. *Ramos v. State*, 407 S.W.3d 265, 269 (Tex. Crim. App. 2013). The hypothetically correct jury charge need not always include all of the charging instrument's allegations.

In the context of the hypothetically correct jury charge construct, this is not the first time this Court has wrestled with the proof required to support a conviction for assault on a public servant. *See Hoitt v. State*, 28 S.W.3d 162, 167 (Tex. App.—Texarkana 2000), *pet. dism'd*, 65 S.W.3d 59 (Tex. Crim. App. 2001). In *Hoitt*, we dealt with similar explanatory language—"To wit: attempting to arrest [Hoitt]"—that was in the indictment and was descriptive of the State's theory of the official duty the officer was exercising, but which we recognized was ordinarily unnecessary for a correct charge on the elements of the offense.

We were confronted in *Hoitt* with a jury charge that conformed to the indictment. It contained language that did not strictly comply with the statute, but was descriptive of how an essential element of the offense was committed. At that time, the Texas appellate courts were still grappling with the extent to which a defendant could be convicted on a charge not submitted to the jury. Accordingly, we analyzed former caselaw in light of the then newly formulated requirements of *Malik* in an attempt to determine whether the State must prove what it alleged or if its proof might vary from the charge. In *Hoitt*, we concluded that, although the charge correctly described the duty being exercised as an arrest, the description was not one of the

8

elements of the offense, but was merely descriptive of the element. We concluded that, under

*Burrell*[6] (which required that the State prove an unnecessary fact alleged in the indictment that

describes an essential element of the offense), the actual charge tracked the indictment and was

thus correct. A petition for review of our decision was granted, but was later dismissed as being

improvidently granted.

Since then, the Texas Court of Criminal Appeals has taken opportunities to refocus the

formulations on this topic. The surplusage rule and the *Burrell* exception[7] were overruled the

next year in *Gollihar v. State*, 46 S.W.3d 243, 256–57 (Tex. Crim. App. 2001). Surplusage was

defined as an allegation in a charging instrument not legally essential to constitute the offense.

*Id.* at 249.

Of course, surplusage problems continue to exist and must still be dealt with. Thus, the

court held in *Gollihar* that, in the future, the "fatal variance" doctrine will be used to resolve

surplusage problems. *Id.* at 256 n.21; *see Williams v. State*, 270 S.W.3d 140, 147 (Tex. Crim.

App. 2008). A variance occurs when the State has proven the defendant guilty of a crime but the

proof at trial varies from the allegations in the charging instrument. *Gollihar*, 46 S.W.3d at 246.

The variance becomes "fatal" when the variance between the indictment and the evidence at trial

denies the defendant notice of the charges against him or her. *Id.* at 256; *Moore v. State*, 11

S.W.3d 495, 499 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Only material variances that

prejudice the defendant's substantial rights render the evidence insufficient or become fatal.

---

[6]*Burrell v. State*, 526 S.W.2d 799, 802 (Tex. Crim. App. 1975), *overruled by Gollihar*, 46 S.W.3d at 256–57.

[7]The *Burrell* exception held that, if the unnecessary allegation described a way in which an element of the crime was committed, the State was required to prove its case as alleged.

9

*Gollihar*, 46 S.W.3d at 257; *Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988) (abrogating rule that mere or slight variance between indictment allegations and proof at trial renders evidence insufficient). Allegations in the charging instrument giving rise to immaterial variances may be disregarded. *Id.*; *Gollihar*, 46 S.W.3d at 257; *Hinojosa v. State*, 433 S.W.3d 742, 757 (Tex. App.—San Antonio 2014, pet. ref'd).

The most recent statement from the Texas Court of Criminal Appeals on this topic is set out in *Thomas v. State*, No. PD-1326-13, 2014 WL 5154586 (Tex. Crim. App. Sept. 24, 2014). In considering the hypothetically correct jury charge appellate courts are to use on review, the court reasoned that the "law as authorized by the indictment" consists of the statutory elements of the indictment and those elements as modified by the indictment. *Id.* at *8–9. That hypothetically correct charge need not include allegations that would give rise to only immaterial (i.e., non-fatal) variances.

While alleging statutory alternative manner and means places the allegation in the hypothetically correct jury charge, allegations of manner and means that are not statutory alternatives are not part of such a charge. *See Gollihar*, 46 S.W.3d at 256. Because the indictment's and charge's allegation that officers were attempting to arrest Piland did not set out a statutory alternative manner and means of committing assault on a public servant, it was not necessary to specify what official duty the officer was exercising, and the allegation was not part of the hypothetically correct jury charge. Thus, the proof that the officers were not trying to arrest Piland is of no moment. The officers were investigating a reported injury caused to a person, allegedly by Piland. That is their duty, and there is accordingly sufficient evidence to

allow a reasonable jury to conclude that they were accomplishing their duty during their encounter with Piland.

Piland also contests the sufficiency of the evidence to prove that he caused a bodily injury to Loden. The evidence was that Piland punched Loden in the upper arm. While there is no evidence of any lasting injury to Loden, "bodily injury" is defined as including simple physical pain. *See* TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2014). According to the definition, then, because Loden testified that it hurt when Piland hit him, the jury could have concluded that Loden suffered bodily injury as that term is defined by the statute.

The evidence is sufficient to support the conviction.

*(3)      Piland Forfeited Any Claim of Indictment Defect*

Piland contends that the indictment is materially defective because it does not specify any level of mens rea for the offense. Piland's complaint, however, was not made to the trial court.

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. . . .

TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005).

Accordingly, Piland has forfeited any right to complain that the indictment[8] had no allegation of mens rea. Accordingly, we can address no error in that regard.

---

[8]The jury charge, on the other hand, includes the proper mens rea allegation—that the act was committed "intentionally, knowingly, or recklessly."

11

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     October 16, 2014
Date Decided:       December 17, 2014

Publish