# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00539-CR

**Dennis Dwight Galindo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT NO. C-14-0220-SA, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Dennis Dwight Galindo was indicted for assaulting Dorothy Ortega, who is the mother of Galindo's son, D.G. The indictment alleged that Galindo struck Ortega and further alleged that Galindo had previously been convicted of assaulting a family member. *See* Tex. Penal Code § 22.01(b)(2)(A) (specifying that assault is third-degree felony if offense is committed against person whose relationship with defendant is described by Family Code and if defendant had previously been convicted of assaulting similarly described victim). Further, the indictment contained an enhancement paragraph alleging that Galindo had previously been convicted of felony possession of a controlled substance. *See id.* § 12.42(a) (elevating permissible punishment range for third-degree felony to that of second-degree felony if defendant has previously been convicted of another felony). After considering the evidence presented during the guilt or innocence phase of the trial, the district court found Galindo guilty. At the end of the punishment phase, the district court

found the enhancement allegation to be true and imposed a sentence of ten years' imprisonment. Subsequent to the district court imposing its sentence, Galindo filed a motion for new trial, and the motion was overruled by operation of law. In three issues on appeal, Galindo asserts that the district court erred by failing to set a hearing on his motion for new trial, that he was denied effective assistance of counsel, and that the evidence is insufficient to support his conviction. We will address his third issue first and after considering all of his issues, affirm the district court's judgment.

**DISCUSSION**

**Legal Sufficiency of the Evidence**

In his third issue on appeal, Galindo argues that the evidence is legally insufficient to support his conviction.[1] When presenting this challenge, Galindo only asserts that the evidence is insufficient to support the district court's determination that Ortega suffered bodily injury and does not challenge the other elements of the offense.

As mentioned above, Galindo was charged with assaulting Ortega, who is the mother of one of his children. *See* Tex. Penal Code § 22.01(b)(2)(A). A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* § 22.01(a)(1). Moreover, bodily injury is defined as "physical pain, illness, or impairment of physical condition."

---

[1] On appeal, Galindo also argues that the evidence is factually insufficient to support his conviction. However, the court of criminal appeals has clarified that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *cf. Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (explaining that "we do not review the factual sufficiency of the evidence . . . on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt").

2

*Id.* § 1.07(a)(8). Furthermore, a factfinder "may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some natural causes of it." *Wingfield v. State*, 282 S.W.3d 102, 105 (Tex. App.—Fort Worth 2009, pet. ref'd).

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

During the trial, Galindo was called to the stand to testify regarding his recollection of the events in question. Specifically, he remembered that Ortega asked him to pick up their son from boxing practice but that he decided to not pick his son up because Ortega did not want their son around Galindo's girlfriend. Moreover, he testified that after Ortega learned that he did not pick up their son, she called him and started yelling at him. In addition, Galindo related that he went over to Ortega's house with his friend Shawn Sanchez to talk about the issue and that during their conversation, she hit him "on my right side. As she hit me, my reaction, I moved back and I put my

arm out, and I guess that's when she's saying I hit her, but I never touched her. My son was in the kitchen." He also stated that "when she hit me, I reached out of reaction and pushed her away. That's all I did." When describing this exchange, Galindo expressly denied hitting or punching Ortega. In addition, Galindo explained that after Ortega hit him, he and Sanchez tried to leave immediately and that as they were leaving, Ortega threw a toy at them. Moreover, Galindo testified that although Ortega's daughter, A.O., was in the home when this incident occurred, A.O. was in the living room and could not have seen anything from where she was sitting, but he related that Sanchez could see the event from where he was.

In his testimony, Galindo explained that it would have been "stupid" for him to punch Ortega because he had already gone to prison for allegedly assaulting her and would not "risk going back." During his testimony, Galindo also stated that Ortega did not have any injuries and that if "I would have hit her like she said I did with my hand closed, anybody would have an injury."[2] In addition, he surmised that the charges at issue were brought because Ortega and A.O. were angry with him for dating someone other than Ortega, and he testified that Ortega's dislike of his current girlfriend continued well past this alleged incident.[3] As support for this assertion, Galindo testified that Ortega wrote him letters explaining that she only filed charges against him because he was

---

[2] When questioned about whether it was possible to "hit someone and not use all of your force," Galindo answered, "What's the point in me hitting her? If I'm going to hit her, I'm going to hit her. What's -- what's touching her going to do?"

[3] During the trial, Galindo stated that he and Ortega continued to have contact after the incident. Specifically, he recalled that Ortega texted him months later and asked him to come over and that Ortega continued to come over to his house to get money for child support; however Galindo also related that Ortega was not initiating the contact between them.

dating someone else.[4]  Furthermore, Galindo asserted that the length of time between the alleged

incident and his subsequent arrest supports his contention that Ortega pressed charges for improper

reasons.  Specifically regarding his arrest, Galindo testified as follows:

> See, that's what's funny to me because, I mean, I've been to prison and they know
> that, because of her on a prior conviction.  Any other time this happened, they arrest
> me right then and there.  And if I'm such a -- I mean, if I committed this assault, why
> didn't they get me right then and there.  They waited all this time to get me when
> times before they -- I've ran from one of them, and it got dismissed due to me
> pleading guilty on other charges, and they went all over San Angelo looking for me.
> And now this time they're just going to let it go three or four months and indict me?
> It don't make no sense.

In addition to testifying on his own behalf, Galindo called Sanchez to the stand to

testify regarding the events that he witnessed on the day in question and Cindy Barrera to testify

regarding a conversation that she heard after the incident.  Sanchez explained that he was present on

the day of the argument, that Galindo and Ortega were arguing because Galindo did not remember

to pick up their son from practice, that he saw Ortega take a "swing at" and hit Galindo, that Galindo

started yelling, that he and Galindo left the home, and that Ortega threw something at them as they

were leaving.  In her testimony, Barrera related that she was friends with Ortega's brother and that

Ortega's brother told her that Ortega slapped Galindo but was going to get Galindo in trouble for it.

In challenging the sufficiency of the evidence, Galindo also refers to portions of

Ortega's testimony and to the testimony of Officer Cobey Bradshaw who responded to the 911 call

about the incident.  During her testimony, Ortega admitted that the alleged assault did not leave a

---

[4] Galindo did not present any letters from Ortega during the trial.

5

bruise and that she did not see any injuries in the photos that were taken shortly after the offense. Similarly, in his testimony, Officer Bradshaw explained that he did not see any injuries when he arrived on the scene after responding to the 911 call and that he did not note any injuries after taking photographs of Ortega on the day of the offense.

However, in addition to the evidence summarized above, Ortega and A.O. testified regarding their recollections of the alleged incident. In her testimony, Ortega explained that when she got home from picking up her son, she and Galindo had an argument about why he did not give D.G. a ride home. Furthermore, she recalled that the argument escalated and that Galindo "hit me in the side of my face," and Ortega expressly denied punching or pushing Galindo. When further describing the event, Ortega testified that she told Galindo that she was mad because he did not pick up their son, that he responded by saying that she was really mad because he was dating someone else, and that the following occurred:

> And I told him no, it wasn't. I told him it was because he didn't pick up my son. And he said, "What about all the guys that you take around my son?" And I told him, "Who do I take around your son?" And he said, "All of San Angelo." I responded, "Fuck you." And that's when he hit me.

Further, she said that it hurt when Galindo struck her and that it left a "red mark when it happened" but that the "redness might have gone away by the time" that the police arrived. In addition, she specified that after Galindo hit her, he walked out the door, picked up a toy in the yard, acted as if he was going to throw it, dropped the toy, and left the premises.

After Ortega finished testifying, her daughter, A.O., was called to the stand. In her testimony, A.O. stated that she was sitting in the living room when she heard her mother and Galindo

6

arguing in the kitchen. Moreover, she explained that when she heard them start to argue, she "started paying attention more" and that she saw Galindo "hit" her mom. In addition, A.O. testified that after Galindo hit her mom, Galindo "just took off mad. He stormed out of the house."

As summarized above, there were conflicts in the evidence regarding whether Galindo assaulted Ortega, and resolution of those conflicts fell squarely within the purview of the district court as the factfinder. In resolving the conflicts in the evidence, the district court was aided by evidence regarding Galindo's extensive criminal history. Specifically, the district court admitted exhibits showing Galindo's five prior misdemeanor convictions and three prior felony convictions, including convictions for theft, evading detention, burglary of a habitation, and multiple convictions for assault and possession of controlled substances. Regarding those prior convictions, in his testimony, Galindo admitted that he had two prior felony convictions for assault and for possession of a controlled substance, conceded that he "probably did" have another conviction for theft, and agreed that he was also convicted of burglary of a habitation. Moreover, as detailed previously, Galindo testified that one of his prior convictions was for assaulting Ortega.

In addition, the district court was also guided by testimony from Sanchez in which he explained that he had been living with Galindo for approximately two months when the incident occurred and that he had a prior felony conviction for obstruction and retaliation. Similarly, the district court had the benefit of additional testimony from Barrera in which she admitted that she is very good friends with Galindo's current girlfriend, that she spends a lot of time with Galindo and his girlfriend, and that she had a prior conviction for theft, two prior convictions for possession of a controlled substance, a prior conviction for forgery, and a prior conviction for failing to appear.

Finally, although Officer Bradshaw testified that he did not notice any injury to Ortega's face, he also recalled that Ortega seemed upset when he arrived, that the children seemed worried, and that after talking with the witnesses, he concluded that Galindo had committed an assault.

In light of the evidence summarized above, of the factfinder's role in making credibility determinations and resolving conflicts in the evidence, and of our standard of review for legal-sufficiency challenges, we conclude that there is legally sufficient evidence establishing that Galindo assaulted Ortega by striking her and causing bodily injury. *See Piland v. State*, 453 S.W.3d 473, 479 (Tex. App.—Texarkana 2014, pet. dism'd) (determining that jury could have concluded that victim suffered bodily injury when victim "testified that it hurt when [defendant] hit him"). Accordingly, we overrule Galindo's third issue on appeal.

**Motion for New Trial**

In his first issue on appeal, Galindo contends that the district court "erred in not setting a hearing on [his] Motion for New Trial."

Approximately one week after the district court imposed its sentence, Galindo filed his motion for new trial. In the motion, Galindo asserted that "[t]he verdict in this cause is contrary to the law and the evidence" and urged the district court to exercise its "discretion to grant a new trial." No affidavits were attached to the motion, and the motion did not further explain how the verdict was inconsistent with the law or the evidence presented.

A few days after the motion was filed, the district court issued an order granting the request for a hearing, and a hearing on the motion was held approximately one month after the

8

motion was filed. Moreover, the docketing statement regarding the hearing detailed that during the hearing, Galindo's trial attorney explained that "she is reviewing additional evidence" and that Galindo has retained an appellate attorney. Furthermore, the docketing sheet chronicled that the district court decided that it "will not rule on Motion for New Trial at this time and will likely allow it to be overruled by operation of law. If [Galindo] needs a hearing on new evidence," his attorney "must request it." *Cf. Stokes v. State*, 277 S.W.3d 20, 25 (Tex. Crim. App. 2009) (explaining that notation of proposed order or hearing date on docket satisfies requirement that motion for new trial be presented to trial court). Ultimately, the motion for new trial was overruled by operation of law. *See* Tex. R. App. P. 21.8 (providing that motion for new trial is deemed denied if court does not rule on motion "within 75 days after imposing or suspending sentence in open court").

In his appellate brief, Galindo notes that he retained new counsel for his appeal after his motion for new trial was filed and asserts without citation to the record the following:

> New counsel contacted the trial court and it was determined that a new trial was denied, but trial judge advised that if needed a new hearing would be held. Appellant Counsel advised by phone on at least two occasions that hearing was requested, but no hearing was ever held. Appellant counsel believes that evidence that [Galindo] was not present at the time of the alleged attack would have been introduced at a hearing on the new trial.

However, nothing in the record reveals that a request for an additional hearing was made or that Galindo or his attorney attempted to obtain a setting on the hearing or to get a ruling on a request for a second hearing. Accordingly, it not entirely clear that Galindo preserved this issue for appeal. *See Perez v. State*, 429 S.W.3d 639, 644 (Tex. Crim. App. 2014) (concluding that because "record contains no evidence that the appellant or his attorney took steps to obtain a

9

setting or attempted to get a ruling on a request for a hearing," appellant did not preserve error regarding trial court's failure to hold hearing on his motion for new trial); *see also Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009) (explaining that presentment must be apparent from record); *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005) (providing that reviewing court should not address whether trial court erred by not holding hearing on motion for new trial if request for hearing was not presented to trial court); *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998) (stating that movant has burden of delivering motion for new trial to trial court "or otherwise bringing the motion to the attention or actual notice of the trial court").

In any event, appellate courts review a trial court's denial of a request for a hearing regarding a motion for new trial under an abuse-of-discretion standard. *See Freeman v. State*, 340 S.W.3d 717, 732 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). To be entitled to a hearing on a motion for new trial, the motion must assert matters that "'are *not* determinable from the record'" and assert "'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *See Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009) (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)); *see also Reyes*, 849 S.W.2d at 815 (explaining that right to hearing on motion for new trial is not absolute right). To satisfy the second ground, the defendant "need not plead a prima facie case in his motion for new trial," but "he must at least allege sufficient facts that show reasonable grounds to demonstrate that he could prevail." *Hobbs v. State*,

298 S.W.3d 193, 199-200 (Tex. Crim. App. 2009). Accordingly, courts require "as a prerequisite to hearing when the grounds in the motion are based on matters not already in the record, that the motion be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis of the claim." *Smith*, 286 S.W.3d at 339.

As set out above, in his motion for new trial, Galindo simply asserted that the verdict was contrary to the law and the evidence and did not further specify how the verdict was inconsistent with any governing law, identify the evidence presented during trial that was contrary to the conviction, or indicate why that issue was not determinable from the trial record.[5] Also, no affidavits were attached to the motion. In addition, although the docketing statement revealed that Galindo's attorney stated during the hearing on the motion for new trial that she was reviewing additional evidence, nothing in the record reveals what the additional evidence was or shows that the additional evidence was ever presented to the district court. Moreover, although Galindo asserts on appeal that he believes that evidence showing that Galindo was not present during the alleged assault would have been introduced at a later hearing, Galindo does not specify that his concern was ever presented to the district court or set out what this additional evidence would have shown. Furthermore, although Galindo contested during trial whether the argument between Ortega and him occurred on the date specified in the indictment, Galindo admitted to being present at Ortega's home during an argument

---

[5] The court of criminal appeals has explained that a claim that a verdict "was against the law and the evidence" raises a sufficiency challenge to the evidence but does not present any other claim. *See State v. Zalman*, 400 S.W.3d 590, 594 (Tex. Crim. App. 2013). As set out in the previous issue, we believe that there was sufficient evidence to support Galindo's conviction, and the sufficiency of the evidence was determinable from the record.

11

concerning his failure to pick up their son from practice, and Ortega testified that the alleged assault occurred during that argument.[6]

For these reasons, we cannot conclude that the district court abused its discretion by failing to set an additional hearing regarding Galindo's motion for new trial.

**Effective Assistance of Counsel**

In his second issue on appeal, Galindo contends that he was denied effective assistance of counsel because his trial attorney had a conflict in this case. As discussed previously, the indictment in this case contained an allegation that Galindo had previously been convicted of assaulting a member of his family or household. On appeal, Galindo contends that he has discovered that his trial attorney "was the former Assistant District Attorney that had prosecuted him on the prior assault case. Said trial counsel failed to discuss her prior conflicting interest with [him]. Trial counsel at trial advised [him] to stipulate to the prior assault." In light of this, Galindo contends that his trial attorney had a conflict of interest sufficient to render her representation of him ineffective.

To succeed on an ineffectiveness claim, the defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). To establish an ineffectiveness claim,

---

[6] The indictment alleged that the offense occurred "on or about" November 21, 2013.

12

the defendant must meet both prongs of this standard, and if the defendant fails to meet one of the prongs, the reviewing court may not find the representation ineffective. *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (stating that failure to satisfy one prong "negates a court's need to consider the other prong"). Evaluations of effectiveness are based on the totality of the representation. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider cumulative effect of counsel's deficiencies). Furthermore, even though a defendant is not entitled to representation that is error-free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136. If trial counsel "is burdened by an actual conflict of interest," there is a limited presumption of prejudice but only if "the defendant demonstrates" that his attorney "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). If the defendant fails to present any evidence regarding the issue, his "claim will fail." *Odelugo v. State*, 443 S.W.3d 131, 136-37 (Tex. Crim. App. 2014).

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "This is true with regard to the question of deficient performance . . . where counsel's reasons for failing to do something do not appear in the record." *Id.* (stating that "counsel's conduct is reviewed with great deference, without the distorting effects

13

of hindsight"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Id.* If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia*, 57 S.W.3d at 440.

Although we recognize that Galindo's motion for new trial was filed by his trial attorney, the motion did not present an ineffectiveness claim or contain any affidavits concerning his trial attorney's alleged role in his prior conviction. Moreover, after Galindo's trial attorney withdrew, his appellate attorney did not attempt to amend the motion for new trial. *See* Tex. R. App. P. 21.4 (setting out 30-day deadline for filing amended motion for new trial without leave of court), 21.8 (providing that motion for new trial is "deemed denied" if not ruled upon "within 75 days after imposing or suspending sentence"); *State v. Moore*, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007) (construing rule 21.4 as allowing defendant to file amended motion for new trial provided that original motion for new trial was timely filed, that amendment was made within 75-day period within which original motion must be ruled upon before being deemed overruled by operation of law, and that State does not object to untimely amendment). In addition, Galindo's trial attorney has not been afforded an opportunity to explain why she did not disclose her alleged involvement in one of Galindo's prior convictions. Perhaps more importantly, nothing in the record before this Court indicates that Galindo's trial attorney had any involvement in his prior conviction. Accordingly, the record before this Court is undeveloped regarding this issue.

In any event, even assuming that Galindo's trial attorney was the prosecutor involved in obtaining Galindo's prior conviction for assault family violence, Galindo has not shown that his

14

trial attorney was actively representing conflicting interests. On the contrary, there is nothing in the record that remotely indicates that his trial attorney was affiliated with the prosecutor's office at the time that she was representing Galindo, and it is not entirely clear how his trial attorney's alleged involvement in his prior conviction could result in a conflict in her representation of Galindo for the separate offense at issue. By agreeing to stipulate to the prior conviction, Galindo merely conceded the fact that he was previously convicted, not that he agreed with the prior conviction or was actually guilty of the offense. Furthermore, Galindo has not demonstrated how this alleged conflict adversely affected his lawyer's performance. More specifically, Galindo has not shown how his trial attorney's decision to encourage him to stipulate to the prior offense prejudiced his case. When discussing the prior convictions, the State explained during the trial that if Galindo did not agree to stipulate to his prior offenses, the State would simply call a fingerprint expert to testify that Galindo's fingerprints matched those from the individual involved in the prior convictions.

Having determined that the record for this issue is not sufficiently developed and that Galindo has not shown that he was prejudiced by this alleged conflict, we need not further address the issue. However, we do note that during the guilt or innocence phase of the trial, on multiple occasions, Galindo's trial attorney successfully objected to the testimony of Officer Bradshaw as hearsay; that his attorney thoroughly cross-examined Ortega on a number of topics, including whether Ortega really called the police because Galindo was dating someone that she did not like, whether she invited Galindo over to her house after the alleged offense, and whether Ortega continued to text Galindo after the alleged assault; and that his attorney cross-examined Ortega's daughter, A.O., about whether she disliked Galindo, about whether she made a statement to the

15

police that she wanted Galindo to go to jail, and about whether Ortega likes Galindo's girlfriend. Moreover, Galindo's attorney questioned Galindo regarding whether he had concerns about the fact that A.O. invoked the Fifth Amendment at the beginning of her testimony before later deciding to answer questions regarding the event, and Galindo explained, "If she said in her statement on it, and then comes in and pleads the Fifth, well, what is that? Is it did I do it or did I didn't do it?" In her closing argument, Galindo's attorney asserted that even though the police knew where Galindo was, he was not contacted about the incident until months later, that any disagreement that occurred between Galindo and Ortega did not occur on the date listed in the indictment, that Ortega decided to punish Galindo for his new relationship, and that Ortega had no visible injuries.

Furthermore, in the punishment phase, Galindo's attorney called several witnesses to testify on Galindo's behalf regarding his non-violent nature, regarding the type of father that he is, regarding efforts that Galindo has made to turn his life around, and regarding the hardship that Galindo's incarceration would impose on his family. During her closing argument, Galindo's attorney argued that there was no serious injury involved and asked the court to consider the testimony from the individuals who currently know the type of person that Galindo is when deciding what punishment to impose.

For all of these reasons, we overrule Galindo's second issue on appeal.

**CONCLUSION**

Having overruled all of Galindo's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   July 1, 2015

Do Not Publish