# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00559-CR

**Zane Lynn Barton, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT NO. CR-13-0614, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Zane Lynn Barton was charged with aggravated assault family violence for allegedly causing serious bodily injury to Stefanie Hunt by cutting her face and neck. *See* Tex. Penal Code §§ 22.01(a) (setting out elements of assault), .02(a) (providing that assault is aggravated assault if person causes serious bodily injury or uses or exhibits deadly weapon), .02(b)(1) (elevating offense from second-degree felony to first-degree felony if defendant caused serious bodily injury to someone whose relationship with defendant is governed by Family Code and if defendant used deadly weapon during assault). After a trial, the jury found him guilty of the offense. During the punishment phase, Barton pleaded true to an enhancement allegation that he had previously been convicted of a felony, and the jury imposed a punishment of life imprisonment. *See id.* §§ 12.32 (listing permissible punishment range for first-degree felony), .42(c) (enhancing punishment range for individual who had previously been convicted of felony). On appeal, Barton contends that he was denied effective assistance of counsel. We will affirm the district court's judgment of conviction.

DISCUSSION

**Effective Assistance of Counsel**

In his first issue on appeal, Barton asserts that he "was denied the effective assistance of counsel as a result of [his] trial counsel's multiple acts of deficient performance."

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). Evaluations of effectiveness are based on the totality of the representation. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider cumulative effect of counsel's deficiencies). Furthermore, even though a defendant is not entitled to representation that is error free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136.

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "This is true with regard to the question of deficient performance . . . where counsel's reasons for failing to do something do not appear in the record." *Id.* (stating that "counsel's conduct is reviewed with great deference, without the distorting

2

effects of hindsight"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Id.* If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

When presenting this issue on appeal, Barton refers to three acts that he asserts constitute ineffective assistance of counsel. First, he contends that his attorney "failed to investigate [his] mental health in regards to his competency and/or sanity to stand trial" and that "there was considerable evidence known to trial counsel that would lead a reasonable attorney to investigate further." *See Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006). In particular, he notes that the appointed attorney that he had before retaining the services of the attorney at issue filed a motion requesting a mental-health evaluation to ascertain whether he was sane at the time of the offense and whether he was mentally competent to stand trial and that the motion states that he "has been prescribed psychotropic medications" in the past. In addition, Barton points to the testimony of Detective Richard Mazanin, who explained that during his interview of Barton after the offense, Barton seemed uncomfortable and fidgety and was mumbling things to himself. Moreover, Barton highlights the testimony from Officer Mazanin in which he related that Barton kept asking if he was going to be arrested and later asked "is that for me?" when an officer holding a ticket book walked by. Next, Barton points to portions of testimony presented at trial demonstrating that he was homeless and living under a bridge at the time of the offense. In light of the preceding, Barton contends that there was evidence that he was suffering from a mental-health issue and that his trial attorney should have investigated the matter.

3

As a preliminary matter, we note that a defendant is incompetent to stand trial only if he does not have "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against" him. Tex. Code Crim. Proc. art. 46B.003(a). Moreover, a "defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." *Id.* art. 46B.003(b). Similarly, "Texas law . . . presumes that a criminal defendant is sane and that he intends the natural consequences of his acts." *Ruffin v. State*, 270 S.W.3d 586, 591-92 (Tex. Crim. App. 2008). However, "Texas law . . . excuses a defendant from criminal responsibility if he proves, by a preponderance of the evidence, the affirmative defense of insanity." *Id.* at 592; *see also* Tex. Penal Code § 8.01 (explaining that it "is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental illness or defect, did not know that the conduct was wrong").

Turning to the issue in this case, although Barton highlights that his prior appointed attorney requested a mental-health evaluation, the record before this Court is silent regarding whether that evaluation was ever performed. However, although the request for a mental-health evaluation stated that Barton had been on psychotropic medications, nothing in the request or in the remainder of the record indicates that Barton was unable to consult with his counsel or understand the nature of the proceedings against him. *Cf. Iniquez v. State*, 374 S.W.3d 611, 617 (Tex. App.—Austin 2012, no pet.) (applying bona-fide standard from previous version of statute and explaining that evidence of history of mental illness does not necessarily compel requirement that competency determination be made if it does not show that defendant is not currently capable of

4

communicating with his lawyer or understanding nature of proceedings); *Hobbs v. State*, 359 S.W.3d 919, 925 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that history of mental illness and of being on psychiatric medications is insufficient "to warrant a competency inquiry absent evidence of a present inability to communicate with his attorney or understand the proceedings").

Furthermore, as mentioned above, Barton points to testimony indicating that he was homeless at the time of the offense and that he was fidgety and was mumbling to himself during his interview as support for his ineffectiveness claim. However, the behaviors referenced by Barton regarding his interactions with the police are not inconsistent with someone who is nervous or afraid that he is going to be arrested, and nothing in the testimony referred to by Barton suggests that he was incapable of understanding that the conduct at issue was wrong. *See* Tex. Penal Code § 8.01. Moreover, although the video was not played for the jury, a recording of Barton's interview with the police was played for the district court. In the video, Barton seems to be talking to himself while waiting for the police to enter the interview room, but although the content of his statements is not always decipherable, the portions that are clear indicate that he was frustrated with the situation and with being present at the police station. Furthermore, Barton remained seated throughout the recording until he decided to leave. When the police officers interacted with Barton, he responded to their questions appropriately and clearly communicated his desire to leave the police station. In addition, he articulately described the bridge under which he was currently living, explained why he wanted to leave, and rejected an offer made by one of the officers to give him a ride. Further, nothing in the remainder of the record suggests that on the day of the offense Barton did not understand the events that had transpired, could not respond to questions posed by the officers, or was unable to control himself during his interactions with the police.

5

Moreover, although the issue of Barton's competency was not specifically addressed by the district court during the trial proceedings, we note that the record in this case demonstrates that many of the factors relied on by courts when making competency determinations indicated that Barton was competent. Under the Code of Criminal Procedure, competency determinations are based on, among other factors, the ability of the defendant to perform the following:

(A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

(B) disclose to counsel pertinent facts, events, and states of mind;

(C) engage in a reasoned choice of legal strategies and options;

(D) understand the adversarial nature of criminal proceedings;

(E) exhibit appropriate courtroom behavior; and

(F) testify.

Tex. Code Crim. Proc. art. 46B.024(1).

The record before this Court reveals that Barton exhibited appropriate courtroom behavior throughout all of the proceedings without a single outburst, and there is no indication in the record that Barton engaged in any improper behavior outside the courtroom during the pendency of the trial. *See Ex parte Lahood*, 401 S.W.3d 45, 50-52 (Tex. Crim. App. 2013) (concluding in habeas context that applicant was denied effective assistance of counsel for failing to investigate applicant's mental health where record showed that multiple family members informed attorney of applicant's history of mental illness, demonstrated that applicant had attempted suicide while in jail, and revealed that applicant "engaged in multiple outbursts and claimed that he was not receiving his

6

required psychoactive medications in jail"). Moreover, Barton complied with instructions from the district court during voir dire to not walk toward a certain door until after the jury had left the room. Furthermore, during the trial, Barton answered appropriately when asked how he wanted to plead to the charges against him, stood up when instructed to for the purpose of entering a plea to the enhancement allegation, and answered coherently when the district court questioned him about his desire to testify and about whether he understood the potential consequences of testifying. In addition, although the contents of the conversations were not transcribed, the record does indicate that Barton's attorney consulted with him throughout the trial.

Based on the record before this Court and given our standard of review, we must conclude that Barton has not shown that the alleged failure to investigate was unreasonable in these circumstances or was so egregious that no competent attorney would have performed similarly. *See Ex parte Martinez*, 195 S.W.3d at 721 (explaining that reasonableness of decision not to investigate must be considered in light of all of circumstances and assessed by applying heavy measure of deference to attorney's decisions).

Second, Barton urges that his trial attorney was ineffective for failing to convey a plea-bargain offer that was made by the State. As support for his assertion that his counsel never informed him of the offer, Barton notes that "[t]he record is void of any oral or written record that [he] was made aware of the plea bargain in the case and the serious consequences of rejecting such plea bargain" and insists that Barton did not become aware of the offer until his appellate counsel informed him after the trial was over. Moreover, he insists that had he been made aware of the plea offer, there is a reasonable probability that he would have accepted the offer, that the prosecution

7

would not have withdrawn the offer, and that the district court would have accepted the plea. *Cf. Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013) (setting out what applicant for writ of habeas corpus must show to establish prejudice in claim that his attorney was ineffective for failing to convey plea-bargain offer).

However, although Barton correctly notes that nothing in the record before this Court indicates that Barton's attorney disclosed to Barton the terms of a plea offer, the record is also silent regarding the existence of any plea offer. Accordingly, we cannot conclude that Barton has overcome the strong presumption that his trial attorney's performance fell within the wide range of reasonable professional assistance, has shown that his attorney's representation fell below an objective standard of reasonableness, or has demonstrated that there has been a failure so outrageous that no competent attorney would have made it. *Cf. Piland v. State*, 453 S.W.3d 473, 474-76 (Tex. App.—Texarkana 2014, pet. dism'd) (addressing issue of whether trial counsel was ineffective where State agreed that counsel did not communicate plea offer to client but still overruling issue because defendant failed to show that he was prejudiced by alleged error); *Rodriguez v. State*, 424 S.W.3d 155, 157-60 (Tex. App.—San Antonio 2014, pet. granted) (upholding on direct appeal trial court's determination that trial counsel was ineffective for failing to adequately advise defendant about plea bargain where motion for new trial contained affidavit from trial counsel stating "that this was his first criminal jury trial and that he provided ineffective assistance due to his lack of experience and knowledge").

Finally, Barton contends that his trial counsel was ineffective for announcing to the jury during the punishment phase that Barton intended to testify before the district court recessed for

8

the day "and then the next day did not have Mr. Barton testify." Moreover, Barton asserts that "[t]he record does not contain any evidence that something had changed between the moment in time that trial counsel was prepared to put . . . Barton on the stand and the next morning, when trial counsel did not put . . . Barton on the stand; therefore there cannot be any strategy behind this action." Furthermore, although recognizing that the statements regarding his decision not to testify were conveyed by his own attorney, Barton likens his attorney's statements to an impermissible comment on his desire to not testify in this case.

As an initial matter, we note that we disagree with Barton's assertion that the lack of a record on this matter compels a conclusion that there could have been no sound strategy involved in the choices and decisions at issue. This seems particularly true in this case where the limited record before this Court indicates that Barton expressed the desire to testify and then changed his mind later. *See Moore v. Johnson*, 194 F.3d 586, 605-06 (5th Cir. 1999) (explaining in appeal of habeas case asserting ineffective assistance of counsel that defendant "is presumed to be the master of his own defense"). As pointed out by Barton, at the end of the second day of trial and immediately after the State rested its case, the district court asked his trial counsel if any witnesses would be testifying for the defense for scheduling purposes, and his attorney responded that Barton would be testifying. After Barton's counsel informed the district court of Barton's intentions, the district court excused the jury for the day. Outside the presence of the jury but before the court recessed for the day, the district court asked Barton specifically if he desired to testify and reminded Barton of the consequences of agreeing to testify, and Barton responded that he wanted to testify. Later, the district court instructed Barton's attorney to clearly convey the potential ramifications of testifying

9

during the punishment phase of the trial to ensure that Barton was making an informed decision. Furthermore, the record reveals that on the following morning, the district court learned that Barton no longer wished to testify and conferred with the parties regarding what type of instruction, if any, should be given to the jury regarding Barton changing his mind. *Cf. Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (concluding that jury instruction sufficiently ameliorated any potential harm from *prosecutor's* comment on defendant's failure to testify during punishment phase); *Moore v. State*, 999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999) (explaining that presumption that instruction to disregard does not cure *prosecution's* comment on defendant's failure to testify "'has been eroded to the point that it applies only to the most blatant examples'" (quoting *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995))). After the jury was brought into the courtroom, the district court informed the jury that Barton had changed his mind and decided not to testify and reminded the jury that they cannot hold that decision against him.

In light of this record and given that the limited information presented to us indicates that the decisions regarding whether to testify or not were made by Barton himself and that Barton changed his mind after the district court asked his attorney if the defense would be calling any witnesses, we cannot conclude that any alleged error stemming from Barton's attorney's statement in front of the jury that Barton wanted to testify was so egregious that no competent attorney would have performed it.

Having determined that the record is not sufficiently developed regarding Barton's alleged claims of ineffectiveness, we need not further address the matter, but we do note that effectiveness challenges must be considered in light of "the totality of the representation" provided

10

by the attorney. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). During voir dire, Barton's attorney discussed with the venire panel the presumption of innocence and the types of evidence that might be presented during the trial, questioned the panel regarding their ability to be fair and unbiased and to render a verdict based on the evidence, argued that members of the panel should be excused for cause, and exercised his peremptory challenges. In the innocence or guilt phase of the trial, Barton's trial attorney emphasized in his opening statement that Barton is presumed innocent and that the State must prove its case beyond a reasonable doubt and argued that the evidence will not show that an offense occurred beyond a reasonable doubt. In addition, Barton's trial attorney extensively cross-examined the State's witnesses, made several successful objections to the questions posed by the State, and fought successfully against the State's objection to his decision to question Hunt regarding her prior drug use. During his closing, Barton's attorney discussed the evidence that was presented, mentioned that no evidence was recovered from the crime scene, talked about Hunt's history of drug use, pointed out inconsistencies between Hunt's testimony and the statement that she initially gave to the police, argued that Hunt might have been assaulted by someone else, noted that Hunt did not say that Barton was the assailant when she was initially treated at the hospital, and urged that Hunt did not decide to accuse Barton of the assault until after she went to her parents' home.

In the punishment phase of the trial, Barton's attorney cross-examined the State's witnesses. Moreover, in his closing, he explained that Barton accepted responsibility for his actions; asked the jury not to sentence Barton to life imprisonment; pointed out that although Barton had an extensive criminal history, only one of those prior crimes was a felony; emphasized that Barton had

11

no prior convictions for assault of any kind; discussed the role that alcohol and drugs might have played in this offense; asserted that there was no evidence suggesting that Barton would ever commit this type of offense again; and argued that the injuries sustained by the victim did not warrant the imposition of a life sentence.

For all of these reasons, we overrule Barton's issue on appeal.

## CONCLUSION

Having overruled Barton's issue on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   August 4, 2015

Do Not Publish