

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00130-CR

_____

ALVIN PETER HENRY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 25589

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

After allegedly stealing steaks from a local Walmart on Christmas Eve in 2013, Alvin Peter Henry, Jr., in an effort to avoid apprehension, led the Reno Police Department on a dangerous, sixteen-minute, high-speed chase. Reaching speeds of 120 miles per hour on roads crowded with holiday travelers, Henry sped through intersections, stop signs, and residential neighborhoods; drove for considerable lengths of time in oncoming lanes of travel; and forced many vehicles off the roadway as a means of avoiding a head-on collision. The chase ended when Henry led officers to his own home after police-deployed spike strips shredded the fleeing vehicle's front tire. A jury watched the dash-cam video recording of the dangerous chase, convicted Henry of evading arrest with a motor vehicle, and entered a finding that his vehicle was used as a deadly weapon. The jury also found that Henry was previously convicted of two felony offenses, resulting in Henry's enhanced sentence of sixty years' imprisonment.

Based on findings by a psychologist that Henry has a low intelligence quotient (IQ) and suffers from psychotic disorders, Henry argues that the trial court erred (1) in failing to allow him to introduce evidence of his diminished capacity during the guilt/innocence phase of his trial and (2) in refusing to submit a jury instruction regarding the effect of his diminished capacity. Henry also argues that during punishment, the State failed to prove that he was the same person who had committed the extraneous offenses introduced during punishment, including the two prior felony offenses used to increase his range of punishment.

We find that the trial court did not abuse its discretion in disallowing evidence of or a jury instruction on Henry's diminished capacity. We also find that the evidence was legally sufficient

2

to link Henry to the extraneous offenses introduced in the punishment phase of his trial. Accordingly, we affirm the trial court's judgment.

## I.     The Trial Court Did Not Abuse its Discretion in its Diminished-Capacity Rulings

### A.     The Diminished-Capacity Evidence

Prior to his trial, Henry was examined by psychologist David Bell, who authored a written report finding that Henry was competent to stand trial, but that he was "both mentally retarded and mentally ill." Henry was unable to read, write, complete simple mathematics problems, identify his parents' occupations, or recite his birthdate. Henry told Bell that he collected a "disability check for being 'slow'" and that he had "an overseer, named Dewayne Coleman." According to Bell's report, Henry said that he was "psycho," that he heard voices which urged him to kill himself, and that he usually took antipsychotic medication, which he stopped taking prior to the offense.

During Bell's interview, Henry claimed that he had taken another, unnamed person to Walmart and that the other person had stolen the steaks from Walmart.[1] After the deed was done, Henry said that he "panicked and took off, refusing to stop." Henry told Bell that he "has been locked up much of his life," that he was very afraid of prison, and that he wished to go to a psychiatric hospital instead. Bell's written report concluded that Henry was "suffering from Mental Retardation and a Psychotic Disorder at the time of the offense," but that he was "NOT deprived by these illnesses of the ability to judge right from wrong."

---

[1] Henry was the sole occupant of the vehicle during the high-speed chase. Police officers found the steaks in the vehicle Henry was driving.

Armed with Bell's reports, Henry asked the trial court to hold a hearing to address the admissibility of his diminished capacity before the jury. During Henry's offer of proof,[2] Bell testified that Henry had a mental age of "[f]ourteen or fifteen" and that his mental illness impacted his judgment and impulse control. However, since Bell only examined Henry for thirty to forty-five minutes, Bell testified that he was "not positive about [Henry's] mental illness," but explained that such a mental illness would make one "more prone to not understand what's going on[,] to do things like panic," and "to just do something really impulsive without regard to where it would lead [him]." Bell confirmed that Henry understood the difference between right and wrong, that his mental illness was not involved in any of the events leading to the arrest, and that Henry ran from the police because he was hoping that he would not get caught.

Henry testified that on the day of the offense, he drove Linda Jones and Sam O'Neil to Walmart in Linda's car and that he stole nothing.[3] Henry's explanation as to why he fled was inconsistent. Henry first said, "I really didn't know the police were behind me until I got home," then testified that he thought someone was after him, and later admitted that he fled because a Walmart employee told him that he was going to call the police. Henry also claimed that he was unaware that he could get into trouble for fleeing and that he heard voices instructing him to drive home where he would be safe. Referring to his prior history of incarceration, Henry added, "[I]f I would have stopped right there on that road, [the police] probably would have killed me, the kind of record I got. That's why I ran." Coleman, Henry's cousin and caretaker, testified that he

---

[2]During the pretrial hearing, all parties agreed that Henry's offer of proof would consist of the testimony elicited during the punishment phase of the trial.

[3]It is unclear whether Henry had a driver's license.

believed Henry operated at the same level as an eight- to ten-year-old child and that he had been hearing voices for a long time. Coleman testified that Henry lived by himself and could fix some meals for himself.

**B.     The Trial Court's Rulings**

The trial court disallowed any testimony regarding mental retardation and mental illness, ruling that such evidence would not be relevant to any issue in the case and, if allowed, would confuse the jury by interjecting concepts of sanity and competence. [4]

At the pretrial hearing, Henry also requested that the following instruction be given to the jury:

> You have heard evidence that the defendant had a mental disease or defect and, as a result, did not have the culpable mental state these instructions have told you the state must prove. This case does not involve a claim by the defendant that he was insane at the time of the offense.
>
> If you find the defense evidence credible, you may consider it in deciding whether the state has proved the defendant had the required culpable mental state.

The trial court declined to include the instruction.

**C.     Analysis**

We review the trial court's decision to exclude evidence of mental illness for an abuse of discretion. *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005). Likewise, we also review a trial court's decision to not submit an instruction in the jury charge for an abuse of discretion. *Reyes v. State*, 422 S.W.3d 18, 28 (Tex. App.—Waco 2013, pet. ref'd) (citing *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000)); *see Bridges v. State*, 389 S.W.3d

---

[4]Henry clarified that he was not raising an insanity defense.

5

508, 511 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Hubbard v. State*, 133 S.W.3d 797, 799 (Tex. App.—Texarkana 2004, pet. ref'd). "An abuse of discretion is shown only when the trial court's ruling lies outside the 'zone of reasonable disagreement.'" *Hernandez v. State*, 438 S.W.3d 876, 878 (Tex. App.—Texarkana 2014, pet. ref'd) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

"Texas does not recognize diminished capacity as an affirmative defense." *Smith v. State*, 314 S.W.3d 576, 590 (Tex. App.—Texarkana 2010, no pet.) (citing *Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008); *Jackson*, 160 S.W.3d at 573). "Rather, it is a 'failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense.'" *Id.* (quoting *Jackson*, 160 S.W.3d at 573–74; *Ruffin*, 270 S.W.3d at 593). "As with the other elements of the offense, relevant evidence may be presented which the jury may consider to negate the mens rea element[,] . . . includ[ing] evidence of a defendant's history of mental illness," provided that the evidence is admissible under the Texas Rules of Evidence. *Jackson*, 160 S.W.3d at 574. However, as the Texas Court of Criminal Appeals stated in *Jackson*,

> [P]resenting evidence of mental illness does not then allow the defense to argue that the defendant is absolutely incapable[,] i.e., does not have the capacity to intentionally or knowingly perform an act. There is simply no defense recognized by Texas law stating that, due to the defendant's mental illness, he did not have the requisite mens rea at the time of the offense because he does not have the capacity, or is absolutely incapable of ever forming that frame of mind.

*Jackson*, 160 S.W.3d at 574–75.

Henry argues that because the diminished-capacity evidence was relevant to his capacity to formulate the requisite mens rea, the trial court abused its discretion in excluding it. Yet, Bell

6

testified that Henry has the mental capacity of a teenager, that he was sane at the time of the offense, that he was competent to stand trial, and that his mental illness was not involved in any of the events leading to his arrest. According to Bell, who was "not positive" about whether Henry actually had a mental illness, the result of Henry's diminished capacity was poor judgment and a lack of impulse control. Bell's report documented Henry's statement that he "panicked and took off, refusing to stop." Bell concluded that Henry ran from the police because he was hoping to evade arrest.

The video recording of the chase showed that Henry's speed quickly escalated after the police began chasing him and that he began driving erratically once patrol units activated their lights and sirens. Henry's testimony (1) that he left Walmart after an employee threatened to call the police, (2) that he thought someone was after him, and (3) that he ran because he believed the police would have killed him due to his criminal record confirmed both that he knew the police were chasing him and that he made the decision to flee. Coleman's testimony that Henry operated at the same level as an eight- to ten-year-old child and that he had been hearing voices for a long time did not establish that Henry lacked the intent to evade arrest.

If evidence of a defendant's mental illness does not directly rebut a defendant's culpable mens rea, a trial court is not required to admit it. *Mays v. State*, 318 S.W.3d 368, 382 (Tex. Crim. App. 2010). While the evidence here established that Henry had diminished capacity, it also established that Henry had the ability to make independent decisions—albeit, at times, poor ones. *See Wagner v. State*, 687 S.W.2d 303, 312 (Tex. Crim. App. 1984) (op. on reh'g) ("Lack of normal impulse control is simply not a circumstance recognized by the Legislature to diminish the criminal

7

responsibility of an accused . . . ."), *superseded by statute as stated in Jackson*, 160 S.W.3d at 573.

Here, Henry made the decision, whether by impulse or otherwise, to engage the police in a sixteen-minute, high-speed chase. Due to the nature of the evidence presented in this case, we cannot say that the trial court abused its discretion in disagreeing with Henry's conclusion that the evidence of his mental retardation and mental illness demonstrated that he was incapable of forming the requisite mens rea.[5] Accordingly, we find no error in either the trial court's exclusion of evidence relating to Henry's diminished capacity during guilt/innocence or its denial of Henry's requested jury instruction. We overrule Henry's first two points of error.

## II.    The Evidence Establishing Henry's Prior Convictions Is Legally Sufficient

During a pretrial hearing, the parties offered and the trial court approved the following stipulation:

> [By the State]: Judge, I had an off-the-record conversation with [Henry's counsel] as it relates to Mr. Henry's prior convictions and his judgment and sentences. [Henry's counsel] has advised me that I will not need to have the fingerprint folks here to prove up those judgment and sentences. I do have certified copies of them. We're going to offer them as stipulated -- as they're valid prior judgment and sentences.
>
> [By Henry's counsel]: That is correct, Your Honor. There's no sense in going through that exercise.

---

[5]Henry's attorney made the following closing argument during the guilt/innocence phase of the trial:

> Ladies and gentlemen, I'm not going to insult your intelligence and suggest you find this man not guilty. Of course, he's guilty. I mean, that's apparent. What I would ask you to do is to wait until you've heard the evidence on punishment before you make a decision regarding what you're going to do on that. [The State is] absolutely correct. And it will become clear to you on punishment why we went through this exercise. Thank you very much.

Thus, without objection, the State introduced several judgments of conviction against Alvin Peter

Henry.[6]  However, during punishment, Henry pled "not true" to the State's enhancement

---

[6]Pursuant to the stipulation, the State introduced:

> (1)     a judgment revoking community supervision issued by the 102nd Judicial District Court of Red River County, Texas, on February 28, 1979, which recited that on November 14, 1978, "Alvin (Peter) Henry" was convicted of theft;

> (2)     a judgment revoking community supervision issued by the 102nd Judicial District Court of Red River County, Texas, on February 28, 1979, which recited that on November 14, 1978, "Alvin (Peter) Henry" was convicted of aggravated assault;

> (3)     a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 29, 1982, which recited that "Alvin Peter Henry" was convicted of possession of a prohibited weapon;

> (4)     a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 29, 1982, which recited that "Alvin Peter Henry" was convicted of burglary of a building;

> (5)     a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 2, 1984, which recited that "Alvin Peter Henry" was convicted of burglary of a building;

> (6)     a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 3, 1989, which recited that "Alvin Peter Henry" was convicted of criminal mischief;

> (7)     a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on March 3, 1989, which recited that "Alvin Peter Henry" was convicted of aggravated assault;

> (8)     a judgment issued by the 102nd Judicial District Court of Red River County, Texas, on June 26, 2002, which recited that "Alvin Peter Henry" was convicted of aggravated robbery;

> (9)     a judgment issued by the 339th District Court of Harris County, Texas, on August 28, 2009, which recited that "Henry, Alvin Peter" was convicted of possession of less than one gram of cocaine;

> (10)     a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury;

> (11)     a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury family violence;

> (12)     a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury family violence; and

> (13)     a judgment issued by the County Court of Red River County, Texas, on June 28, 2010, which recited that "Alvin Peter Henry" was convicted of assault causing bodily injury.

allegations. Because he is Alvin Peter Henry, *Jr.*, Henry argues that the judgments of conviction failed to establish that he is the same person that was convicted of all of the prior offenses.

"'To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists [ ] and (2) the defendant is linked to that conviction.'" *Reese v. State*, 273 S.W.3d 344, 347 (Tex. App.—Texarkana 2008, no pet.) (quoting *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007)); *see Cooper v. State*, 363 S.W.3d 293, 296 (Tex. App.—Texarkana 2012, pet. ref'd). "No specific document or mode of proof is required to prove these two elements." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *see Littles v. State*, 726 S.W.2d 26, 30–32 (Tex. Crim. App. 1984) (op. on reh'g). In proving prior convictions, identity often includes the use of a combination of identifiers, and "[e]ach case is to be judged on its own individual merits." *See Littles*, 726 S.W.2d at 30–32. The totality of the circumstances determines whether the State met its burden of proof. *Flowers*, 220 S.W.3d at 923.

A defendant's stipulation to the existence of prior convictions is sufficient to link the defendant to those convictions. *See Cooper*, 363 S.W.3d at 297 (citing *Miller v. State*, 33 S.W.3d 257, 262 (Tex. Crim. App. 2000) (finding counsel's statement that defendant was already serving two sentences sufficient to link defendant to two prior convictions); *see also Woods v. State*, 398 S.W.3d 396, 400 (Tex. App.—Texarkana 2013, pet. ref'd) ("Where a defendant stipulates to the existence of the prior convictions, he makes a judicial admission which removes the need for the State to provide proof of that conviction.") (citing *Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005)).

Henry stipulated to his prior convictions, relieving the State from bringing "the fingerprint folks" to trial. Henry's plea of "[n]ot true" to the State's enhancement allegations served only to require the State to prove the enhancement allegations. At no point during the trial did Henry indicate any discomfort with his stipulation to the prior offenses that were not used to enhance his punishment. Thus, we find that Henry's stipulation sufficiently linked him to these non-enhancing offenses.

However, Henry's plea of "[n]ot true" to the State's enhancement allegations required the State to prove the enhancements notwithstanding Henry's stipulation. *See Cooper*, 363 S.W.3d at 296. Thus, the State was required to present evidence linking Henry to a March 3, 1989, conviction for aggravated assault and a June 26, 2002, conviction for aggravated robbery.

During the punishment phase of his trial, Henry testified that he had been incarcerated many times. He admitted that he was convicted of and went to prison for (1) aggravated assault of a police officer and (2) aggravated robbery.[7] Coleman also testified that Henry had spent the vast majority of his life in prison and that Henry was imprisoned in 1989 for aggravated assault and again in 2002 for aggravated robbery. We find that the testimony of Henry and Coleman, in tandem, sufficiently linked Henry to the prior convictions used to enhance his punishment. Accordingly, we overrule Henry's last point of error.

---

[7]Henry also testified that he was incarcerated for theft and burglary of a building.

## III.    Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    March 4, 2015
Date Decided:      April 16, 2015

Publish