

NUMBER 13-19-00173-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KENNETH WHITLEY,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

On appeal from the 24th District Court
of Refugio County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

Appellant Kenneth Whitley appeals from his conviction for (1) unauthorized use of

a vehicle, a state jail felony, *see* TEX. PENAL CODE ANN. § 31.07, and (2) evading arrest or

detention in a vehicle, a third-degree felony. *See id*. § 38.04(b)(2)(A). By two issues,

Whitley contends that the trial court erred by: (1) excluding expert testimony, and (2) *sua sponte* submitting a special issue to the jury at sentencing. We affirm.

## I.     BACKGROUND

Whitley was charged by indictment for: unauthorized use of a motor vehicle (count one), *see id.* § 31.07; criminal mischief (count two), *see id.* § 28.03(a); evading arrest or detention with a vehicle (count three), *see id.* § 38.04(b)(2)(A); and aggravated assault against a public servant (count four). *See id.* § 22.02(b)(2). Prior to trial, the State dropped count two, criminal mischief, and proceeded on counts one, three, and four.

On the morning of April 4, 2018, Deputy Hugo Rosas with the Refugio County Sheriff's Office was on duty when he witnessed a maroon Kia Sorento drive by his patrol vehicle. Deputy Rosas testified that he noticed that the vehicle's driver "tensed up" and that made Deputy Rosas suspicious. He continued to monitor the vehicle and the driver, and he ran the license plate number through his dispatch. Dispatch reported that the vehicle had been reported stolen, causing Deputy Rosas to contact Lieutenant Jeffrey Raymond[1], of the Refugio County Sheriff's Office, for backup.

Lieutenant Raymond joined Deputy Rosas, following from behind. At that time, Deputy Rosas did not believe it was safe to stop the vehicle because it was not in a controlled environment, but rather it was near schools and businesses. Deputy Rosas also contacted Chief Martin DeLeon of the Woodsboro Police Department to notify him of the situation, as they were headed in the direction of Woodsboro and may need assistance. Deputy James Longoria, of the Refugio County Sheriff's Office, was positioned in town in preparation for the stop.

---

[1] At the time of the incident, Lieutenant Raymond was a Sergeant with the Refugio County Sheriff's Office.

As Deputy Rosas followed the vehicle, he noted that the driver was carefully driving to avoid breaking any traffic laws. When the vehicle made a right turn, Lieutenant Raymond advised Deputy Rosas to stop the vehicle. At that point, Deputy Rosas activated his overhead lights. The vehicle did not stop, but instead began speeding and Deputy Rosas activated his siren and advised dispatch that he was in pursuit of the vehicle. Deputy Rosas testified that the vehicle approached one hundred miles per hour, on a street where the speed limit was thirty miles per hour. While Deputy Rosas was in pursuit, the vehicle traveled down a dead-end road, lost control briefly, then regained control and crashed through a gate onto private property. When the vehicle appeared to be coming to a stop, Deputy Rosas stopped and began to get out of his patrol vehicle; the vehicle then "took off" again around the private property. Deputy Longoria was positioned to stop the vehicle and the vehicle crashed directly into Deputy Longoria's patrol unit. The vehicle then attempted to pull away from the crash when Lieutenant Raymond pinned the vehicle from behind and Deputy Rosas pinned the vehicle on the passenger side. The driver of the vehicle was removed and identified as Whitley.

The jury returned a verdict of guilty as to unauthorized use of a motor vehicle and evading arrest or detention with a vehicle, and not guilty as to aggravated assault against a public servant. Both convictions were enhanced, and Whitley was sentenced to the Texas Department of Criminal Justice—Institutional Division for eighteen years for count one and for seventy-five years for count three, with the sentences to run concurrently. The jury also found that Whitley used or exhibited a deadly weapon during the commission of the offense, to wit: a motor vehicle.

This appeal followed.

3

## II. EVIDENCE OF MENTAL STATE

By his first issue, Whitley argues that the trial court erred when it excluded testimony from Kollette Tolbert, a licensed professional counselor, regarding Whitley's mental health diagnosis. Specifically, Whitley argues that the testimony of Tolbert was relevant "in order to negate the specific intent to commit certain offenses, including evading arrest…."

### A. Standard of Review and Applicable Law

We review the trial court's decision to exclude evidence of mental illness for an abuse of discretion. *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005). "An abuse of discretion is shown only when the trial court's ruling lies outside the 'zone of reasonable disagreement.'" *Hernandez v. State*, 438 S.W.3d 876, 878 (Tex. App—Texarkana 2014, pet. ref'd) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).

The trial court, in rendering its decision to exclude Tolbert's testimony, aptly noted that in *Henry v. State*, the court of appeals dissected the relevant holding in *Jackson*. 466 S.W.3d 294, 298 (Tex. App.—Texarkana 2015), *aff'd*, 509 S.W.3d 915 (Tex. Crim. App. 2016).

> "Texas does not recognize diminished capacity as an affirmative defense." Rather, it is a "failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense." "As with the other elements of the offense, relevant evidence may be presented which the jury may consider to negate the mens rea element[,] . . . includ[ing] evidence of a defendant's history of mental illness," provided that the evidence is admissible under the Texas Rules of Evidence. However, as the Texas Court of Criminal Appeals stated in *Jackson*,
>
> > [P]resenting evidence of mental illness does not then allow the defense to argue that the defendant is absolutely

4

> incapable[,] i.e., does not have the capacity to intentionally or knowingly perform an act. There is simply no defense recognized by Texas law stating that, due to the defendant's mental illness, he did not have the requisite mens rea at the time of the offense because he does not have the capacity, or is absolutely incapable of ever forming that frame of mind.

*Henry*, 466 S.W.3d 294, 298–99 (internal citations omitted).

## B.    Analysis

Here, as in *Henry*, Whitley argues that evidence of his mental illness diagnosis was relevant as to whether he possessed the requisite mens rea and the trial court erred by excluding it. The trial court held a "gatekeeper" hearing outside of the presence of the jury in order to determine if Tolbert's testimony was admissible. Tolbert testified that she is a licensed professional counselor for the intake department at the Gulf Bend Center. She explained that Whitley requested a diagnostic evaluation from the Gulf Bend Center, and she performed Whitley's diagnostic evaluation on January 25, 2019.

In order to perform her diagnostic evaluation, Tolbert collects a "social history, presenting problems with mental health, so what's going on in the moment, educational history, and work history, and trauma history." She met with Whitley for two hours. Subsequently, she reviewed Whitley's records from his State hospitalization in April 2018. Her provisional diagnosis of Whitley was that he has a "personality disorder, not otherwise specified," meaning that Whitley fell into two categories of personality disorders: antisocial personality disorder and borderline personality disorder. Her findings also indicated that Whitley suffered from a single episode of major depressive disorder and that he suffers from post-traumatic stress disorder (PTSD) stemming from an alleged sexual assault when previously incarcerated on another matter. Whitley reported to Tolbert that he was

5

previously diagnosed with attention deficit hyperactivity disorder (ADHD), attention deficit disorder (ADD), and obsessive-compulsive disorder (OCD).

Tolbert testified that stealing a car would not be related to PTSD; however, his decision to evade arrest or detention could be related to his fear of returning to prison. Upon questioning by the trial court Tolbert stated that even with the diagnosed disorders, Whitley would have been capable of forming the intent to run from the officers, and he would have known that they were law enforcement.

> THE COURT: Since you have added ADHD, ADD, and OCD, are any of those diagnoses that you have rendered opinions on as it relates to this defendant, when I use the words mens rea, that's a legal term, just like you have many terms that cause us to try to understand what you're saying, mens rea means forming the intent. In other words, if, for example, it's a[n] evading detention, did the person that was evading detention allegedly, have the intent to run, knowing that it's law enforcement? Do you follow me? Whereas, lacking the mens rea would say, well, his ADHD, his ADD, and his OCD prevented him from knowing that they were police officers or that he was running from police officers. Are you testifying to anything as it relates to mens rea?

> THE WITNESS: It wouldn't have prevented him from knowing that they were police officers.

> THE COURT: Or to be intentionally evading them by going a hundred miles an hour down a road?

> THE WITNESS: I wasn't in the vehicle. ADHD does cause impulsive decisions, and so—but at some point he would have, he would have realized what he was doing.

> THE COURT: I am not interested in impulsive. I understand that's really more of he's doing it.

> THE WITNESS: Right.

> THE COURT: What I am inquiring about is his state of mind. That's what mens rea is.

6

THE WITNESS:    He would have known they were cops and would have known he was running from them.

The trial court excluded Tolbert's testimony. Similarly, in *Henry*, it was determined that the mental illness at issue was not involved in any of the events leading to the appellant's arrest. *Id.* at 299. While there, as here, the expert concluded that there could have been poor judgment and lack of impulse control, it did not directly rebut his mens rea. *See id*. "If evidence of a defendant's mental illness does not directly rebut a defendant's culpable mens rea, a trial court is not required to admit it." *Id.* (citing *Mays v. State*, 318 S.W.3d 368, 382 (Tex. Crim. App. 2010)).

Whitley argues that the trial court misinterpreted the admissibility issue as a diminished capacity argument and focused solely on whether Whitley had knowledge of what he was doing, not intent. Whitley attempts to distinguish the facts of *Henry* by stating that in *Henry* the defense was attempting to introduce an affirmative defense of diminished capacity, but Whitley goes on to acknowledge that the defense in *Henry* "further requested a defense based largely upon defendant's mental state without mentioning diminished capacity." Relying on *Ruffin v. State*, Whitley argues that evidence relating to a history of mental illness is relevant and may be admissible to negate the mens rea element. *See* 270 S.W.3d 586, 596 (Tex. Crim. App. 2008).

*Ruffin* involved a defendant who was suffering from severe depression and a psychotic break. *Id*. at 589–90. The evidence presented by expert testimony was that Ruffin was delusional and paranoid at the time of his offense and he did not believe or understand that he was shooting at law enforcement. *Id.* at 590. Here, in contrast, the expert testimony Whitley sought to present to the jury stated the opposite; Whitley knew

7

that he was running from police officers and leading them on a high speed chase, and even if his motive was to avoid going back to jail because of his PTSD, his intent was to get away from known law enforcement. Accordingly, as in *Henry*, we cannot conclude that the trial court erred in excluding Tolbert's testimony during the guilt/innocence phase of Whitley's trial. *See Henry*, 466 S.W.3d at 299–300.

Whitley's first issue is overruled.

### III. PUNISHMENT CHARGE

By his second issue, Whitley argues that the trial court erred at sentencing by *sua sponte* submitting a special issue to the jury "which requested them to consider whether [Whitley's] evading involved use of a dangerous weapon," which was not alleged in count three of the indictment. The State notes that Whitley did not object to the charge of the court on punishment, which included the special issue of a deadly weapon enhancement to evading arrest or detention with a vehicle. Furthermore, the State contends that Whitley was on notice of the special issue as it was contained in count four of the indictment, which alleged that Whitley committed aggravated assault against a public servant, with the use of a deadly weapon.

### A. Standard of Review and Applicable Law

"[I]n each felony case . . . tried in a court of record, the judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14.

When we review claims of jury charge error, we first decide whether there was error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Ferguson v. State*, 335 S.W.3d 676, 684 (Tex. App.—Houston [14th Dist.] 2011, no pet.). If there

8

was error and appellant objected to the error at trial, then only "some harm" is necessary to reverse the trial court's judgment. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, however, the appellant failed to object at trial—as here—then the appellant will obtain a reversal "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial '—in short 'egregious harm.'" *Id*. Egregious harm is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defense theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

If a jury finds that a defendant used or exhibited a deadly weapon in the commission of a felony offense, the trial court must include that finding in its judgment. TEX. CODE CRIM. PROC. ANN. art. 42A.054(c); *see id.* art. 42A.054(b) (stating that a defendant is not eligible for judge-ordered community supervision if there is an affirmative deadly weapon finding); *see also* TEX. GOV'T CODE ANN. § 508.145 (restricting an inmate's eligibility for parole if the judgment of conviction contains an affirmative deadly weapon finding). *Polk v. State* addressed the methods by which a statutorily required affirmative finding of a deadly weapon may be made. 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). One of the methods authorized by the Court was the submission of a special issue during the punishment phase of the trial:

> Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:
>
> > 1) the deadly weapon or firearm has been specifically pled as such (using the nomenclature "deadly weapon") in the indictment ([a]pplies where the verdict reads "guilty as charged in the indictment");

9

2) where not specifically pled in "1)" above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,

3) a special issue is submitted and answered affirmatively.

*Id.* (internal citations omitted).

No inferences are required when the trial court submits a question to the jury as a special issue in punishment: the trial court specifically asks the jury in the jury charge whether a deadly weapon was used or exhibited during the commission of the offense by the defendant or by a party to the offense, and the jury answers that question directly in a separate verdict form. *Duran v. State*, 492 S.W.3d 741, 747 (Tex. Crim. App. 2016).

## B. Analysis

Whitley argues that the special issue of a deadly weapon finding was introduced for the first time as to the evading arrest or detention charge. Whitley specifically argues that he did not receive adequate notice because the State did not allege use of a deadly weapon specifically in the evading arrest or detention count.

We disagree. The State notes,

> accused persons are only entitled to notice, *in some form*, that the use of a deadly weapon will be a fact issue at the time of trial. *Ex parte Beck*, 769 S.W.2d at 526. When the theories of prosecution contained in the counts are so interrelated as under the facts of this case, the election by the State to pursue one of the counts in preference to the other will not vitiate the notice given in the indictment in its original form. *Grettenberg v. State*, 790 S.W.2d 613, 614-15 (Tex. Crim. App. 1990).

"A pleading *pointedly tendering* the issue whether a given thing is a deadly weapon within the meaning of [Texas Penal Code § 1.07(a)(11)] provides notice that, should evidence raise it, the trial court is authorized to submit a special issue to the factfinder. *Ex parte Beck*, 769 S.W.2d at 530 (emphasis in original).

Here, the indictment alleged, in count four, that Whitley committed aggravated assault on a public servant with a deadly weapon, to wit: the vehicle. He was found not guilty under this count, but due to this allegation, he was aware that the State was considering the motor vehicle as a deadly weapon. Where, as here, the appellant received some notice that the use of a deadly weapon will be a fact issue at the time of trial, adequate notice has been given. *See Grettenberg*, 790 S.W.2d at 614–15 (holding that defendant was sufficiently notified that State would be seeking a deadly weapon finding even though the portion of the indictment containing the deadly weapon allegation was voluntarily abandoned by the State). Therefore, the trial court did not err in including the special issue of a deadly weapon finding in the punishment phase. Whitley's second issue is overruled.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
27th day of February, 2020.