

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-20-00023-CR

---

JIMMY DALE HALL, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-19-26934

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

A Fannin County jury convicted Jimmy Dale Hall, Jr., of delivery of methamphetamine in an amount of four grams or more but less than 200 grams, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). After the jury found the State's enhancement allegations true, it assessed, and the trial court imposed, a sentence of sixty years' imprisonment.

On appeal, Hall argues that insufficient evidence corroborated the testimony of a confidential informant, the trial court erred in failing to grant a mistrial after a veniremember referenced that he was in custody, and one of the State's enhancement allegations was not sufficiently proven during punishment. We find that (1) sufficient evidence corroborated the confidential informant's testimony, (2) Hall forfeited his complaint about the failure to grant a mistrial, and (3) sufficient evidence established Hall's prior conviction. As a result, we affirm the trial court's judgment.

*(1)     Sufficient Evidence Corroborated the Confidential Informant's Testimony*

Hall asserts that the testimony of Bobby McEuen, a confidential informant, was not sufficiently corroborated. We disagree.

McEuen testified that he had previously made drug deals with Hall at a house located on 220 Cherry Street and that William Abbott, a police officer with the City of Bonham, engaged McEuen to participate in a controlled buy. McEuen spoke with Hall to arrange the methamphetamine purchase and gave Hall the money handed to him by Abbott to make the purchase. McEuen left after Hall told him he would have to drive to Dallas to obtain the drugs. After Hall later called McEuen, McEuen returned to the house, went to Hall's bedroom, and

2

"made the exchange." McEuen clarified that Hall was "weighing up the bags," and gave him "the dope" he had purchased. He then returned to Abbott and gave him the drugs. Other testimony at trial showed that the plastic bag McEuen gave to Abbott contained 5.87 grams of methamphetamine.

Because a conviction cannot be sustained solely on the testimony of a confidential informant, the informant's testimony must be corroborated by other evidence. TEX. CODE CRIM. PROC. ANN. art. 38.141. Sufficiency of the evidence to corroborate an informant's testimony is gauged by "exclud[ing] the testimony of the covert agent from consideration and examin[ing] the remaining evidence (i.e., non-covert agent evidence) to determine whether there is enough evidence that tends to connect the defendant to the commission of the offense." *Malone v. State*, 253 S.W.3d 253, 258 (Tex. Crim. App. 2008). To constitute sufficient corroboration, the evidence need only "tend to connect" the accused with the crime. *Id.* Because the standard does not impose a high threshold and need not directly link the accused to the crime,

> "[a]ll the law requires is that there be some [other] evidence which tends to connect the accused to the commission of the offense. While individually these circumstances might not be sufficient to corroborate the [confidential informant] testimony, taken together, rational jurors could conclude that this evidence sufficiently tended to connect appellant to the offense."

*Cantelon v. State*, 85 S.W.3d 457, 460–61 (Tex. App.—Austin 2002, no pet.) (quoting *Hernandez v. State*, 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997)); *see McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). We must view the corroborating evidence in the light most favorable to the verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (reviewing sufficiency of accomplice-witness testimony). Evidence showing that the "accused

3

was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Malone*, 253 S.W.3d at 257 (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)).

Here, aside from McEuen's testimony, we find that ample evidence tended to connect Hall to the offense. Abbott testified that he heard from different sources that Hall was selling methamphetamine at the Cherry Street house. Abbott testified that he used McEuen, a confidential informant who had provided Abbott with credible information in the past, to obtain methamphetamine from Hall during a controlled buy. Before the buy, Abbott searched McEuen and his vehicle to confirm the absence of drugs or contraband. Abbott then gave McEuen $100.00 in marked bills to give to Hall in exchange for drugs and equipped him with a hidden camera.

McEuen's transactions with Hall were recorded on video and through photographs taken from a pole camera facing the Cherry Street house where the controlled buy occurred. The video showed that McEuen met with Hall, who was easily identified because of a distinctive tattoo, gave Hall the money, and was told to come back to pick up the product because Hall had to retrieve it from Dallas. When they heard that Hall had made it back to town, Abbott again searched McEuen and his vehicle to confirm the absence of drugs or contraband before McEuen went to the Cherry Street house to pick up the drugs.

On video, the jury saw that McEuen met Hall and discussed the transaction with him during the controlled buy. The video showed Hall, identified by face and tattoo, twisting the top

4

of a clear plastic bag containing a white crystalized substance. After the transaction, both the video and Abbot's testimony showed that McEuen returned to Abbott and turned over the drugs.

We find that Abbott's testimony and the video of the controlled buy were sufficient to corroborate McEuen's testimony. As a result, we overrule this point of error.

*(2)    Hall Forfeited His Complaint About the Failure to Grant a Mistrial*

During voir dire, the State asked the panel members if there were any reasons why they could not sit in judgment in this case. In response, a veniremember said, "I work at the facility where he's housed. I read his mail." After the veniremember was brought to the bench for a discussion outside of the jury's hearing, the veniremember clarified that he worked at the Fannin County detention center in the mail room and read Hall's mail. By agreement, the veniremember was challenged for cause, and the trial court cautioned him, "for future reference if [he were] on a panel," to bring up such an issue at the bench "because [the defendant is] entitled to [the panel] not knowing he's confined."

After the veniremember was released, Hall's counsel stated, "[I]t was pretty clear that my client's in custody. I believe that that violated his right for the jury not to know he's in custody, and I'd move for a mistrial." After hearing the State's argument that "[t]he word 'facility' is pretty ambiguous" and "[t]here could be numerous facilities where he worked," the trial court denied Hall's motion for a mistrial.

Citing to cases involving defendants who were shackled or in jailhouse clothing even though Hall was in plain clothes and not restrained, Hall argues that the trial court should have granted the motion for mistrial because the veniremember's comments violated Hall's

5

presumption of innocence. Here, we conclude that Hall forfeited his complaint because he failed to request a curative instruction.

As explained by the Texas Court of Criminal Appeals in *Young v. State*,

> An instruction to disregard attempts to cure any harm or prejudice resulting from events that have already occurred. Where the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew. Like an instruction to disregard, a mistrial serves a corrective function. However, the class of events that require a mistrial is smaller than that for which a sustained objection or an instruction to disregard will suffice to prevent or correct the harm. A grant of a motion for mistrial should be reserved for those cases in which an objection could not have prevented, and an instruction to disregard could not cure, the prejudice stemming from an event at trial—i.e., where an instruction would not leave the jury in an acceptable state to continue the trial.

*Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). As a result, "the traditional and preferred procedure for a party to voice its complaint has been . . . (1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient." *Id.* "A party may skip the first two steps and request a mistrial," but error on appeal is only preserved if an "instruction to disregard would not have cured . . . the harm flowing from the error." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013); *see Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012). If "[t]he appellant [does] not request a curative instruction before moving for a mistrial," he "forfeit[s] appellate relief for an error that could have been cured by such an instruction." *Brewer*, 367 S.W.3d at 253; *see Young*, 137 S.W.3d at 70.

Hall argues that, "[w]hether preservation of the error required requesting a limiting instruction appears unsettled." Yet, an instruction to disregard is presumed to cure the harm

6

from almost any improper remark or argument, it is presumed that a jury will follow an instruction to disregard, and the Texas Court of Criminal Appeals has determined that references to a defendant's incarceration, while improper, can be cured by a prompt instruction to disregard. *See Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992).

Here, the panel was reminded during voir dire about the presumption of Hall's innocence. Without more, we do not find the veniremember's statement that he worked in the facility where Hall was housed was so flagrant or prejudicial that it was incurable by instruction. Had the trial court been asked, we see no reason why it could not have issued proper curative instructions to remind the jury about the presumption of innocence and to disregard the veniremember's statements. Because proper instructions to disregard would have been sufficient to cure any harm or prejudice caused by the veniremember's statements in front of the jury, we find that Hall's failure to request such instructions resulted in the forfeiture of his appellate complaint on this point. As a result, we overrule this point of error.

*(3)      Sufficient Evidence Established Hall's Prior Conviction*

Hall also asserts that there was insufficient evidence to show that he was the same person who was convicted in cause number CR-16-25700 for possession of more than one but less than four grams of a penalty group 1 controlled substance. We disagree.

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists . . . and (2) the defendant is linked to

7

that conviction." *Henry v. State*, 466 S.W.3d 294, 301 (Tex. App.—Texarkana 2015), *aff'd*, 509 S.W.3d 915 (Tex. Crim. App. 2016) (quoting *Reese v. State*, 273 S.W.3d 344, 347 (Tex. App.—Texarkana 2008, no pet.) (quoting *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007))). "No specific document or mode of proof is required to prove these two elements." *Id.* (quoting *Flowers*, 220 S.W.3d at 921). "In proving prior convictions, identity often includes the use of a combination of identifiers, and '[e]ach case is to be judged on its own individual merits.'" *Id.* (quoting *Littles v. State*, 726 S.W.2d 26, 30–32 (Tex. Crim. App. 1984) (op. on reh'g)). "The totality of the circumstances determines whether the State met its burden of proof." *Id.* (citing *Flowers*, 220 S.W.3d at 923).

"[T]he proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Flowers*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007) (quoting *Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988)). "The pieces standing alone usually have little meaning." *Id.* (quoting *Human*, 749 S.W.2d at 836). "However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id.* (quoting *Human*, 749 S.W.2d at 836). "The trier of fact fits the pieces of the jigsaw puzzle together[,] . . . weighs the credibility of each piece[, and] . . . determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the totality of the evidence shows that the existence of the prior conviction and its link to the defendant "can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id.* "The standard of review for evaluating the

8

sufficiency of evidence requires that the appellate court 'consider all the evidence in the light most favorable to the [fact[-]finder's] finding.'" *Henry*, 509 S.W.3d at 919 (quoting *Wood v. State*, 486 S.W.3d 583, 589 (Tex. Crim. App. 2016)).

Here, the State established the existence of the prior judgment with a certified copy of a judgment in cause number CR-16-25700 from the 336th Judicial District Court of Fannin County, Texas, against "Jimmy Dale Hall, Jr.," for possession of a penalty group 1 substance in an amount greater than or equal to one gram but less than four grams. The judgment contained Hall's state identification number and recited a sentence of five years' imprisonment. The Texas Court of Criminal Appeals has recognized this as "a preferred and convenient means" of proving that a prior conviction exists. *Flowers*, 220 S.W.3d at 921. The State also included a certified copy of the indictment in cause number CR-16-25700, which alleged that "Jimmy Dale Hall, Jr., did then and there intentionally and knowingly possess a controlled substance, namely, methamphetamine in an amount of one gram or more but less than four grams." The indictment listed Hall's date of birth, driver's license number, height, weight, and hair and eye color. Hall's thumbprint was also included.

Despite this evidence, Hall argues that it is insufficient to establish that he was the person convicted in cause number CR-16-25700 because the State was not able to match his thumbprint to the judgment. Yet, Hall admits that the State established his prior conviction in cause number 21407 in the 336th Judicial District Court of Fannin County, Texas, with a final judgment that included his thumbprint because expert testimony showed that Hall's thumbprint was matched to the print contained on that judgment. Hall's judgment in cause number 21407 contained the

9

same state identification number as the judgment in CR-16-25700. Moreover, the file in cause number 21407 contained a community supervision violation report listing the same date of birth and driver's license number as the ones provided in the indictment in cause number CR-16-25700.

The evidence of Hall's conviction in CR-16-25700 showed that it was against "Jimmy Dale Hall, Jr.," and contained Hall's known and unique state identification number, driver's license number, and date of birth. Also, the offense in this case and in cause number CR-16-25700 occurred in Fannin County and resulted from the possession or delivery of methamphetamine. As a result, we conclude that the evidence was sufficient for a rational jury to find, beyond a reasonable doubt, that Hall was the person who had been convicted in cause number CR-16-25700. Consequently, we overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     November 9, 2020
Date Decided:       December 11, 2020

Do Not Publish