

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00136-CR
_____

BRUCE LYNN JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR24-106

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Rusk County jury convicted Bruce Lynn Jackson of assault on a peace officer, Emanuel Aguilar, by hitting Aguilar in the head with a flashlight. *See* TEX. PENAL CODE ANN. § 22.01(b-2) (Supp.). The jury imposed an enhanced sentence of thirty years' confinement. On review, we find that the indictment and jury charge contained immaterial variances and that the evidence at trial was sufficient to prove the charged offense. We also find that, despite Jackson voluntarily absenting himself from most of the trial, the State sufficiently identified him as the perpetrator, and the State sufficiently proved a prior conviction to raise the punishment range of the offense of conviction. We affirm the trial court's judgment.

## I.    Background

On the night of January 31, 2024, Kurtes Lawrence, a deputy with the Rusk County Sheriff's Office (RCSO), was called to a residence on a report of criminal trespass. When Lawrence arrived, he noticed Jackson was "agitated" while at his mother's house, and his mother wanted him to leave. Jackson began walking away, but Lawrence remained to make sure Jackson did not return.[1] Lawrence testified that Jackson did return, and after "hollering" at his mother from the shoulder of the road, he "began walking westbound into a lane of traffic." Lawrence suspected Jackson was "under the influence of a narcotic." According to Lawrence, Jackson was "walking in the lane of traffic in the middle of the road" and "was a danger to

---

[1]This was the second or third time that law enforcement had been to the scene that night.

himself and/or others."[2]  Lawrence testified that Jackson left the roadway, and Lawrence followed him in has marked patrol vehicle.  He intended to arrest Jackson for public intoxication.

Emanuel Aguilar, the complainant and a deputy with the RCSO, arrived to assist Lawrence.  By that time, Jackson was in the parking lot of the post office with his hands down.  Lawrence had his TASER drawn, and Aguilar moved to Jackson's side to handcuff him.  As Aguilar attempted to put handcuffs on Jackson, Jackson hit Aguilar in the left temple with a flashlight and absconded.  Aguilar was "dazed" and described the injury as "[a]bout a seven" on a pain scale of one to ten.  He subsequently experienced bruising and swelling, and the jury saw a photo of his injury.[3]  Aguilar said he was hit with a "white and black hard flashlight."  Although Lawrence and Aguilar continued to look for Jackson, authorities did not find and arrest him until later that night.

## II.    Sufficient Proof of Assault on a Peace Officer

Jackson claims the State failed to prove that Aguilar[4] was lawfully discharging an official duty when he attempted to arrest Jackson for public intoxication.  We do not agree with Jackson's characterization of the record.  Lawrence was attempting to arrest Jackson for public intoxication when Aguilar arrived at the scene to assist.  Jackson then hit Aguilar in the head with a flashlight, thus assaulting a peace officer while that officer was lawfully discharging an official duty.

---

[2]At one point, Lawrence, who began to follow Jackson on foot, used his flashlight to warn drivers of his and Jackson's presence in the road.

[3]Aguilar experienced pain from the injury for some time when he chewed or bit down.

[4]Both Aguilar and Lawrence were in deputy uniforms and driving marked RCSO vehicles.  Jackson does not challenge the proof of this element.

3

"In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Piland v. State*, 453 S.W.3d 473, 477 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson v. State*, 589 S.W.3d 292, 298 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997))). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"[W]hen faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). A variance is material only if it fails to "inform[] the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial" and if "the deficiently drafted indictment would subject the defendant

to the risk of being prosecuted later for the same crime." *Id.* (quoting *U.S. v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)).[5] "Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included." *Id.*

The State had to prove that Jackson assaulted Aguilar, who was a peace officer lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. § 22.01(b-2). The variance between the indictment and the jury charge, alleging that the injury occurred while Aguilar was arresting Jackson for public intoxication,[6] was immaterial. There is no claim that Jackson did not know what offense he needed to defend against, and there is no chance he could be prosecuted again for this same offense. *See Gollihar*, 46 S.W.3d at 258.

The evidence was sufficient to prove Jackson assaulted Aguilar, a peace officer, in the course of lawfully discharging an official duty. We overrule the first point of error.

## III.    Sufficient Evidence Proved Jackson's Instrument of Assault

Next, Jackson complains that, although the indictment and charge allege that he assaulted Aguilar by hitting him with a "heavy duty flashlight," there was no evidence the flashlight was, in fact, "heavy duty." Much of our above analysis and discussion of variance applies to this issue, which we will overrule.

---

[5]*Gollihar* "adopt[ed] the materiality test applied by many other courts including the Fifth Circuit." *Gollihar*, 46 S.W.3d at 257.

[6]This is not to say the State did not prove that Aguilar was arresting Jackson for public intoxication. Lawrence was looking for Jackson to arrest him for public intoxication, and Aguilar was assisting Lawrence. Rather, we simply point out that the reason for arrest was not required by the hypothetically correct jury charge. "Under the 'hypothetically correct jury charge,' we conclude that there was no requirement that the State prove the arrest allegation." *Piland*, 453 S.W.3d at 477.

We refer to and incorporate our above recitation of the standard of review for evidence sufficiency and how to address variances between charging instruments and the evidence at trial. In *Gollihar*, the State's allegation in its indictment and charge of the wrong model number on a stolen go-cart was a non-fatal variance between the charging instrument and the evidence presented at trial.[7] Here, the State's description of the flashlight is equally a non-fatal variance between the charging instrument and the evidence presented at trial. "[T]he State was not required to plead the model number of the stolen cart in order to give adequate notice of the charges against [Gollihar]," nor was it required to plead the description of the flashlight in order to give Jackson notice of his charges. *See id.*

The State charged Jackson with assaulting peace officer Aguilar by hitting him with a flashlight. Whether that flashlight was heavy duty, LED, red, or yellow has no bearing on whether Jackson was sufficiently put on notice for the conduct he would stand trial for or whether he could be subsequently charged with another offense arising from the same conduct. The description of the flashlight was an immaterial variance. We overrule the second point of error.

## IV.    The State Identified Jackson as the Perpetrator that Assaulted Aguilar

Jackson complains that the State failed to identify him as the perpetrator of Aguilar's assault. "Identification of the defendant as the person who committed the offense charged is part of the State's burden of proof beyond a reasonable doubt." *Wiggins v. State*, 255 S.W.3d 766,

---

[7]*See Gollihar*, 46 S.W.3d at 257–58.

771 (Tex. App.—Texarkana 2008, no pet.) (citing *Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984)).

Jackson voluntarily absented himself from most of the trial. He was not in court for the witnesses and the complainant to identify him. However, at the beginning of voir dire, he appeared at counsel's table with his attorney, and the trial court introduced him to the venire panel: "If you'll have your client please stand. This is Mr. Jackson. All right. You may be seated, sir." After shuffling the venire panel, the trial court and counsel met at the bench, and the trial court explained, "This is outside the presence of the jury. I will note for the record that we're having some, quote, unquote, difficulty with the defendant." The trial court continued by noting that Jackson was "in the ancillary room approximately 25 feet from the proceedings[,] which [could] be heard." Jackson refused to "re-enter[] the courtroom to sit at counsel table. But he [wa]s in the room and he c[ould] hear" and could "in fact, see, should he so desire to." Further, the trial court found "that [Jackson] . . . had ample opportunity to be [t]here and voluntarily chose not to be."

The next morning, before opening arguments and testimony, Jackson's attorney told the court that his "client [wa]s in custody still with the Rusk County Sheriff's Office" and had "indicated that he d[id] not want to come to court th[at] morning." It was the trial court's understanding that Jackson had been informed of the situation from the court's bailiff, Charles Brandon Thompson. The trial court announced that the trial would "proceed because of the fact Mr. Jackson was present yesterday when the jury was selected and sworn and further in the

7

courtroom while a plea of not guilty was entered upon his behalf after the indictment was read." The trial court concluded, "[W]e will proceed at this time."

Thompson testified that Jackson was in the courtroom the morning of voir dire, and Thompson identified a photo of Jackson. That same photo was shown to Aguilar and Lawrence, and they identified Jackson as the man in the photo. The court in *Rohlfing v. State* held,

> Absent any indication, prior to appeal, that the jury may have been misled by the in-court identification procedure, we will not presume that some person other than appellant may have been identified and that the jury nonetheless chose willfully to convict appellant without evidence that he was the sole perpetrator of this offense.

*Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. [Panel Op.] 1981). "[T]he absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witnesses' testimony." *Wiggins*, 255 S.W.3d at 771 (citing *Meeks v. State*, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.)); *see Littles v. State*, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984) (op. on reh'g) ("[I]t has long been an accepted practice to identify the accused by means of a photograph.").

The evidence was sufficient for the jury to identify Jackson as the person who assaulted Aguilar. This point of error is overruled.

## V. The Evidence Was Sufficient to Prove the Enhancement Allegation

The State alleged and offered proof of a prior, final, felony conviction to increase Jackson's range of punishment. *See* TEX. PENAL CODE ANN. § 12.42(b). In his fourth point of error, Jackson claims there was insufficient proof that he was the person convicted in that cause.

State's Exhibit 13 is a judgment entered May 16, 2013, in the 9th Judicial District Court of Montgomery County for the offense of driving while intoxicated (DWI), third or more

8

offense. *See* TEX. PENAL CODE ANN. § 49.09 (Supp.). The convicted defendant in that cause was Bruce Lynn Jackson. The judgment identified Jackson with the State Identification (SID) number 06624122. That name and SID number are the same as those on the three other convictions that were admitted as State's exhibits 10, 11, and 12. Craig Sweeney, the investigator for the Rusk County District Attorney's Office, testified that the fingerprints on exhibits 10, 11, and 12 matched those of Jackson when he was arrested for the present offense.

However, State's exhibit 13, the judgment for a prior conviction of DWI, third or more offense, alleged in the State's notice of intent to seek enhanced punishment, contained only a partial right thumbprint, and Sweeney could not positively identify that partial print as being the same as that obtained at Jackson's arrest. Because exhibit 13 had the same name and SID number as the other convictions, Sweeney testified that he was "pretty confident" that Jackson was the same person convicted in exhibits 10, 11, 12, and 13.

Both Sweeney and Lieutenant Cassandra Shaw, jail administrator for the Rusk County Jail, testified that an SID number is unique to an individual. In reviewing the sufficiency of the evidence to prove a prior conviction, "the important issue is . . . whether a reasonable trier of fact could . . . find beyond a reasonable that 1) the alleged prior . . . conviction existed and 2) this conviction is linked to [the] appellant." *Flowers v. State*, 220 S.W.3d 919, 924 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* at 921. "In proving prior convictions, identity often includes the use of a combination of identifiers, and '[e]ach case is to be judged on its own individual merits.'" *Henry v. State*, 466 S.W.3d 294, 301 (Tex. App.—Texarkana 2015) (alteration in original) (quoting *Littles*, 726

9

S.W.2d at 32), *aff'd*, 509 S.W.3d 915 (Tex. Crim. App. 2016). We look to "the totality of the evidence to determine" whether prior convictions have been proved true. *Flowers*, 220 S.W.3d at 923.

The prior conviction (exhibit 13) alleged in the State's "Notice of Intent to Seek Higher Punishment" was proven to exist by nature of the certified copy produced by the State. Jackson was linked to that conviction as follows: three other judgments, introduced into evidence, bear the same name and SID number—Bruce Lynn Jackson, 06624122.—as Exhibit 13. The other three judgments, marked as exhibits 10, 11, and 12, bear Jackson's fingerprints, as testified to by Sweeney. A "reasonable trier of fact," based on "the totality of the State's evidence," could find "the enhancement paragraph true beyond a reasonable doubt." *Id.* at 925. The evidence was sufficient to link Jackson to the prior felony conviction.

In the same point of error, Jackson complains that the trial court abused its discretion in admitting exhibit 13. Under Article 37.07 of the Texas Code of Criminal Procedure, any evidence that the trial court "deems relevant to sentencing" is admissible during the punishment phase of a trial. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008). If the evidence "will assist the fact finder in deciding the appropriate sentence in a particular case," it is relevant to the determination of punishment. *Sims*, 273 S.W.3d at 295.

Exhibit 13 was noticed before trial and was necessary for the State to prove entitlement to seek a higher range of punishment. *See* TEX. PENAL CODE ANN. § 12.42(b). It was relevant to sentencing. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). "When certified copies of a

10

judgment and sentence and the authenticated records of the Texas Department of Corrections or other penal institutions are used, these documents have been held admissible . . . ." *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986). There was no abuse of discretion in admitting exhibit 13. The fourth point of error is overruled.

## VI. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted: May 22, 2025
Date Decided: June 23, 2025

Do Not Publish

11