# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00746-CR

**James Charles Johnson, II, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 426TH DISTRICT COURT OF BELL COUNTY
### NO. 22DCR86064, THE HONORABLE STEVEN J. DUSKIE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Johnson appeals from his dating-violence assault conviction. He argues the evidence is insufficient to prove he caused bodily injury and that the trial court abused its discretion in admitting evidence of his relationship with the victim. We affirm.

## BACKGROUND

In the early morning hours of March 7, 2022, the Killeen Police Department responded to a call and found a woman, Robin Ashford, dead in her apartment. Detective Brian Goodsby was assigned to investigate her death. He found out that Ashford had been at a Killeen club called O'Malley's the night before. He ended up talking to Ameria Lockett, a postal employee who also worked as a DJ at the club. She identified Johnson and said that she had seen him with Ashford, who was a family friend and a regular at the club, outside and inside the club that night. Ashford had previously introduced her to Johnson as "Cowboy," her boyfriend. Lockett was sitting

in her car in the parking lot of the club waiting for her shift when she saw Ashford and Johnson approach the door.

> Robin led the way. Cowboy, as I know him, followed her. Robin attempted to grab the door and he slapped her arm, forehead, telling her, "You don't fucking listen." Robin then—They exchanged words. Robin was speaking. I didn't hear what she was saying. She continued to proceed to go in the building. At that time Cowboy then grabbed her and turned her around. They were exchanging words more that I did not hear. In the midst of exchanging words, he took his hand, slapped her.

The backhand slap caused Ashford to recoil and grab her face, and "her whole body shook." After that Ashford stormed off into the club. Johnson paced a while and then also went into the club. Lockett then entered the club with her DJ gear. Ashford met her at the door near the jukebox and they made small talk. While Lockett was setting up, Ashford went to sit with Johnson. The couple sat in silence. After an hour, Johnson got up to buy a couple of beers; Ashford came up to the DJ booth and asked Lockett to play Michael Jackson and Prince. During these interactions, Lockett saw that Ashford's face was "red and swollen." At the DJ booth, Lockett twice asked Ashford if she was okay. Ashford said, "Yeah, I'm fine. I just really love that music," and "Yeah, I'll be all right. I'll be fine. I just want to hear the music." When Johnson came back to the table, they drank the beers in silence and then left.

After Lockett told officers what she had seen, Detective Goodsby obtained a warrant for Johnson's arrest for assault.

Although the base assault offense is a class A misdemeanor, the State alleged that in 2021, Johnson pled guilty to dating-violence assault, making this a repeat dating-violence offense, which is a third-degree felony. *See* Tex. Penal Code § 22.01(b)(2)(A); Tex. Fam. Code § 71.0021(b).

2

At trial both Detective Goodsby and Lockett testified. Johnson stipulated to the prior dating-violence assault, and the trial court instructed the jury to find that allegation true. The jury found Johnson guilty as charged.

At the punishment stage, Johnson pled true to the single felony enhancement that had been alleged in the indictment, a 2002 murder, making the punishment range for the third-degree felony that of a second-degree felony, 2-20 years. *See* Tex. Penal Code §§ 12.33, 12.42(a). The jury assessed punishment at confinement for 15 years and a fine of $5,000. The trial court sentenced Johnson accordingly. Johnson appealed.

## ANALYSIS

### *Sufficiency*

Johnson argues "the mere modicum of evidence presented does not show beyond a reasonable doubt that he caused pain, illness, or any impairment of physical condition [to Ashford]."

### *Applicable Law and Standard of Review*

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve

3

conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another[.]" Tex. Penal Code § 22.01(a)(1). Assault is a result-oriented offense; "there must be an injury." *Price v. State*, 457 S.W.3d 437, 442 (Tex. Crim. App. 2015). Bodily injury can mean "physical pain." Tex. Penal Code § 1.07(a)(8). This definition encompasses even relatively minor physical contact that results in any physical pain whatsoever. *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009); *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). Direct evidence of pain or impairment is not necessary; "[a] fact finder may infer that a victim felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Garcia*, 367 S.W.3d at 688.

*Application*

As charged here, the State had the burden to prove, beyond a reasonable doubt, that Johnson intentionally, knowingly, or recklessly caused bodily injury to Ashford; that Ashford was a person he had a dating relationship with; and that Johnson had been previously convicted of an assaultive offense committed against a person he had a dating relationship with. Tex. Penal Code § 22.01(a)(1), (b)(2)(A); Tex. Fam. Code § 71.0021(b).

Johnson challenges only the proof that he caused bodily injury. But here, the State offered evidence from which the jury could deduce that Ashford suffered at least minor pain, and thus, bodily injury, as it is defined in the penal code. *Garcia*, 367 S.W.3d at 688. The threshold for bodily injury is low and can be met by direct evidence or indirect evidence supporting a rational inference that the actor caused physical pain. *See Laster*, 275 S.W.3d at 524 (defendant grabbed

4

complainant around waist and pulled her causing "pain"); *Lane v. State*, 763 S.W.2d 785, 786-87 (Tex. Crim. App. 1989) (defendant pulled and twisted wallet from complainant's hand causing red and purple bruise); *Coleman v. State*, 631 S.W.3d 744, 751-52 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (defendant slapped and hit complainant causing "redness to the left side of her face"); *Smith v. State*, 587 S.W.3d 413, 420 (Tex. App.—San Antonio 2019, no pet.) (defendant grabbed complainant by her hair causing her to slip on rocks which "hurt"); *Piland v. State*, 453 S.W.3d 473, 479 (Tex. App.—Texarkana 2014, pet. ref'd) (defendant punched complainant in the upper arm and "it hurt"); *Morales v. State*, 293 S.W.3d 901, 910 (Tex. App.—Texarkana 2009, pet. ref'd) (defendant moved or charged into complainant's body causing skinned knees); *Thomas v. State*, 303 S.W.3d 331, 333-34 (Tex. App.—El Paso 2009, no pet.) (defendant pushed complainant causing redness on her back); *see also Bin Fang v. State*, 544 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (collecting cases holding that evidence of a cut or bruise is sufficient to show bodily injury).

Here, the jury could rationally infer that Ashford felt physical pain from Lockett's testimony, which it must have found credible, that when Ashford came up to her, "maybe an hour" after the slap and while Johnson was getting beers from the bar, her face "was red and swollen." *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) ("testimony of the eye witness alone was sufficient to support the jury's verdict"). People of common intelligence understand that a backhand slap that is hard enough to cause 1) recoiling; 2) shaking; and 3) lasting redness and swelling naturally causes pain. *Garcia*, 367 S.W.3d at 688.

Johnson argues that the State failed to prove that any redness and swelling Lockett observed on Ashford's face was necessarily the result of his strike on Ashford, that there could have been another causative agent in the time elapsed between Lockett's first observations and her

5

encounters with Ashford in the club. Johnson argues that because there was a lapse between when Ashford and Johnson entered the club and when Lockett entered the club, any conclusion that Johnson's slap caused the redness and swelling was speculative. We disagree. Ashford testified that she entered the club with her DJ belongings just after the couple entered. She described two interactions with Ashford, one when she walked in, and one about an hour later. And she told the jury that during those interactions, she observed Ashford's red and swollen face. She also testified that there were never more than twenty people in the club, and that she is "able to take lay of the land" and can see how people are interacting with one another. Here, the jury was entitled to draw reasonable inferences from these basic facts to the ultimate fact. *Jackson*, 443 U.S. at 319. The basic facts (Johnson slapped Ashford; Ashford had redness and swelling to her face in the same place he slapped her) support a reasonable inference to the ultimate fact (Johnson caused Ashford bodily injury). As the State notes, it is not required to disprove every conceivable alternative to the defendant's guilt to sustain a jury's verdict on a sufficiency of the evidence claim. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). "Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id*. We hold the State adequately met its burden to show bodily injury and overrule Johnson's sufficiency complaint. *Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13.

### *Relationship Evidence*

#### *Applicable Law and Standard of Review*

Article 38.371 provides that in a family violence case, and "subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all

6

relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed [dating-violence assault], including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. art. 38.371(b). The article "does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law." *Id*., art. 38.371(c).

"Extraneous-offense evidence is generally admissible if the evidence is relevant to a fact of consequence apart from its tendency to prove character conformity." *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022). "But even if a court determines that evidence is relevant and admissible for a non-conformity purpose, Rule 403 may still preclude its admission if the trial court determines that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay or needlessly presenting cumulative evidence." *Id*.

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie "outside the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439-40 (Tex. Crim. App. 2005).

*Application*

After some direct examination of Lockett, the State requested permission from the trial court to ask Lockett about Johnson's controlling behavior toward Ashford. The State sought to elicit "relationship evidence" under Article 38.371. Johnson argued such evidence would be

7

unfairly prejudicial (and thus excludable under Rule 403). After listening to the State question Lockett outside the presence of the jury and overruling Johnson's further objections that Lockett's observations were speculative and inadequately founded—the trial court admitted the evidence. Before the jury Lockett was asked to describe how Johnson and Ashford interacted when they were at the club. Lockett stated:

> I would see them sitting at a table alone. Robin would be sitting in the inside of the table. Cowboy would sit on the outside, and he pretty much controlled the way she moved around the bar. In order for her to get up and move around, she would have to go through him. In order for her to go to the bar, she would have to go through him. For her to go to the bathroom [or] dance, she would have to go to him. If she was dancing in a way that he didn't like, he would come and grab her and put her back at the table on the inside, and she would sit down. And that was a regular thing.

Lockett testified that she had seen the couple, "Three times a week for a year." And again, she testified that because there were never more than twenty people at the club, she could see, from her DJ booth, how people were interacting with one another.

On appeal, Johnson argues that the evidence was irrelevant because the "character trait of controlling" is "such a nebulous concept as to lack any probative force." But under Rule 401, evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. *Beham v. State*, 559 S.W.3d 474, 482 (Tex. Crim. App. 2018); Tex. R. Evid. 401.

And the evidence was probative because the fact that Johnson had consistently acted controlling towards Ashford, in whatever manner, tends to make the defense of innocence that was raised in opening argument ("he did not commit the offense," "he did not strike this woman in the manner that is described") less probable. *See Lozano v. State*, 706 S.W.3d 429, 444 (Tex. App.—Austin 2024, no pet.) (extraneous offense evidence admissible to rebut defensive

8

theory as presented in opening statement that abuse did not occur); Tex. R. Evid. 401, 404(b)(2). The evidence had other relevance outside of character conformity; it explained Ashford's apparent unwillingness to admit she was not okay to a family friend, and instead, to act as if nothing had happened. *Brickley v. State*, 623 S.W.3d 68, 81 (Tex. App.—Austin 2021, pet. ref'd) (evidence that explains why a victim of domestic violence does not seek to defend himself or seek help from authorities or that contextualizes actions of both accused and complainant relevant under Article 38.371); *Valdesgalvan v. State*, 664 S.W.3d 407, 413-414 (Tex. App.—Fort Worth 2023, no pet.) (same); *Fernandez v. State*, 597 S.W.3d 546, 566 (Tex. App.—El Paso 2020, pet. ref'd) (same).

Johnson argues that any probative value was nevertheless unfairly prejudicial under Rule 403. But the evidence did not pose a danger of unfair prejudice; it was neither graphic nor emotionally charged and was logically probative. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006) ("unfair prejudice" refers to tendency to suggest decision on improper, often emotional, basis). Nor was it substantially outweighed by the other countervailing factors specified in the rule.

The evidence did not tend to confuse the issues; it bore on a subject of a genuine controversy—whether Ashford had suffered pain even though she said she was fine. *Id*. ("confusion of the issues," refers to tendency to confuse or distract from main issues in case). The evidence was not misleading; the jury was well-equipped to judge the evidence's probative force given the common understanding that body language can inform the dynamics of a relationship. *Id*. ("misleading the jury" refers to tendency of item of evidence to be given undue weight because jury not equipped to understand it). Finally, the presentation did not cause undue delay. Nor was it part of a needless presentation of cumulative evidence. Instead, the hearing about and presentation of the evidence was brief—together taking up about ten pages of the reporter's record and the

9

evidence was the only evidence of its kind admitted. *Id*. ("undue delay" and "needless presentation of cumulative evidence" concern efficiency of trial proceeding). The trial court could have reasonably concluded that the probative value of Lockett's observations was not substantially outweighed by the countervailing factors specified in the rule. *See id*. at 642–43; *Lozano*, 706 S.W.3d at 444-46 (probative value of evidence illuminating nature of complainant's relationship with defendant not substantially outweighed by danger of unfair prejudice where evidence not complex, evidence less serious than charged offense, and evidence constituted minor fraction of State's case in chief) *Rodriguez v. State*, 678 S.W.3d 375, 387 (Tex. App.—Dallas 2023, pet. ref'd) (same); *McDonnell v. State*, 674 S.W.3d 694, 703-04 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (same). Because the trial court did not abuse its discretion in admitting the relationship evidence, we overrule Johnson's evidentiary complaint. *Tillman*, 354 S.W.3d at 435; *Lopez*, 86 S.W.3d at 230 ; *Mechler*, 153 S.W.3d at 439.

## CONCLUSION

Having overruled Johnson's two appellate complaints, we affirm the judgment of the trial court.

 

_____

Chari L. Kelly, Justice

Before Justices Triana, Kelly and Crump

Affirmed

Filed:  August 29, 2025

Do Not Publish

10